MOUNTAINEER DISPOSAL SERVICE, INC.

*v.*

N. H. DYER, *State Director of Health*

(No. 13278)

Submitted January 10, 1973.          Decided June 19, 1973.

*Walter L. Wagner, Jr.,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *George H. Mitchell,* Assistant Attorney General, for respondent.

HADEN, JUDGE:

This is an original application by petitioner, Mountaineer Disposal Service, Inc., a corporation, for a writ of mandamus to compel the Honorable N. H. Dyer, State Director of Health, hereinafter referred to as "Director", to issue the petitioner a permit to operate a sanitary landfill, which permit is a precondition required by West Virginia Code, Chapter 16, Article 1, Section 9 (Michie's 1931), as amended.

In March 1972, the petitioner filed plans and a request for approval of a sanitary landfill operation to be located in Kanawha County, West Virginia, adjacent to State Local Service Road 12/2. The plans, specifications and other papers were filed pursuant to the requirements of *Code,* 1931, 16-1-9, as amended, and the regulations of the State Department of Health on file with the office of the secretary of state, designated as "Department of Health Adm. Reg. 16-1 Series II, Section 6" *et seq.* (July 1, 1967). On March 17, 1972, Mr. Raymond R. Smith, president of petitioner corporation, received a letter from the Director denying the approval of the application for the reason that past difficulties encountered by the health

department in securing Smith's previous compliance as an individual with State law and departmental regulations in the operation of a pre-existing landfill known as the Smith Creek Dump, indicated that Smith, and presumably a corporation of which he was president, was incapable of properly operating a lawful sanitary landfill. Subsequent oral communication between the parties produced no change in the Director's position, and the Director refuses to this day to issue the permit requested by petitioner.

The application for mandamus was filed in this Court on November 3, 1972. It alleged the petitioner's compliance with the statute and regulations; the Director's general authority to issue approval; and the Director's arbitrary and capricious denial or refusal to issue the permit. The relief sought in the petition is in the alternative: either an outright approval of the permit by the Director, or a specification by the Director of what additional information he will require in order to grant approval to petitioner to operate.

The rule granted by this Court on November 20, 1972, was returnable January 10, 1973, at which time the case was submitted for decision upon the pleadings and briefs on behalf of the parties.

The Director demurred to the petition for the reason that the petitioner had failed to exhaust other administrative remedies. In addition, the answer of the Director denies that his disapproval of the permit was arbitrary and capricious and, by implication, alleges that he has not abused the discretion given him by the statute.

Under the accepted rules of pleading, all other allegations of the parties not denied are to be taken as true.

The question for decision is: Does the State Director of Health have discretion under the statute and regulations, to deny a properly executed and submitted application to operate a sanitary landfill, when his refusal is based upon

past unsatisfactory operations of applicant's president in the same regulated business?

The Director does not deny that petitioner has complied with the requirements of the statute and regulations, in that petitioner has submitted a properly executed application for the permit. The Director's purported application of the police power of the State is manifested in his refusal to grant an otherwise proper application to operate a sanitary landfill due to the noncompliance with the statute and regulations in other similar operations conducted by petitioner's president and chief executive officer.

The operation of a sanitary landfill, formerly known by its more prosaic name as a garbage dump, was a legitimate business enterprise at common law. On the other hand, the operation of a sanitary landfill does affect the public health. This has been implicitly recognized by the Legislature in its delegation of power to the State Department of Health and the Director of Public Health as the department's chief executive officer to regulate the operation of sanitary landfills, incinerators and other methods of disposing of solid waste. See, *Code*, 1931, 16-1-1 *et seq.*, as amended. This principle is affirmatively recognized by regulation number 6.02, promulgated by the Director pursuant to statutory authorization, wherein it is also declared that the disposal of garbage or solid waste by the method of open dumping or by the operation of an unregulated landfill, is a public nuisance. It is well settled law in this jurisdiction that the operation of any business affecting the public health is subject to regulation through the legitimate exercise of police powers by the State. Consequently, the Legislature may, in the exercise of the police powers, enact laws for the protection of property and the promotion of the public health of a community, and these powers may be lawfully delegated to an administrative agency to see to their faithful execution. *Huntington v. State Water Commission*, 137 W.Va. 786, 797, 73 S.E.2d 833 (1953); 9 MICHIE'S JUR., *Health and Sanitation*, § 2 (1950).

Pursuant to the legitimate exercise of the police power, the Legislature gave the State Board of Health authority ". . . to enforce all of the laws of this State concerning the public health . . .," and directed the Board, ". . . to protect the life and health of all of the inhabitants of the State . . . ." *Code*, 1931, 16-1-3, as amended. In that same section, the Board was given the power to inspect and to make and enforce, for the protection of the public health, reasonable rules and regulations to control the sanitary conditions of all places where offensive trades or industries are conducted. Section 3 *supra.* The Board was also given the general power and authority to make and promulgate such rules and regulations as it may deem necessary and advisable to properly put into effect the public health laws of this State and for the administration of the powers granted to it by this article. *Code,* 1931, 16-1-3 *supra.*

In Section 6 of Article 1, the Director of Health is declared to be the executive officer of the State Board of Health; he is charged with administering the provisions of this article and all other laws of the State relating to public health, and within the authority of the Department of Health.

*Code*, 1931, 16-1-9, as amended, gives the Director of Health the express authority to regulate the operation of sanitary landfills and similar methods of disposal of solid waste, sewage and related refuse material. The statute provides in pertinent part as respects this case:

> "No . . . private . . . firm, corporation . . . or persons, shall install or establish any system or method . . . of garbage and refuse disposal insofar as each affects the public health in this State unless the same is installed or established in accordance with plans, specifications, and instructions issued by the state department of health or which have been approved in writing by the director of health or his authorized representative."

The statute further provides:

> "Whenever the director of health . . . finds upon investigation that any system or method . . . or garbage or refuse disposal, . . . is such as to endanger the public health or is creating a nuisance that is detrimental to health, the director of health . . . shall be empowered to issue an order requiring the owner of such system or method to make such alterations, within a reasonable time, as may be necessary to correct the improper condition."

*Code,* 1931, 16-1-16, as amended, also permits the Director to conduct investigations, make inquiries, and hold hearings concerning matters covered by the laws of this State pertaining to public health, and provides that the hearings shall be open to the public and shall be held upon such call or notice as the Board of Health shall deem advisable.

The following Section 17 provides that every order of the State Board of Health and any denial or revocation of an approval, certificate or license, shall set forth the reasons and shall state the acts to be done or requirements to be met before approval by the Board will be given, or the approval, license or certificate granted or restored, or the order modified or changed.

Taking the undenied allegations of the petitioner to be true, it is apparent that the petitioner has met all of the preconditions of the statute and the regulations in making his application for an approval to operate a sanitary landfill. The Director has refused to give the petitioner permission to operate the sanitary landfill and has not stated the acts to be done or the requirements to be met which will bring petitioner in compliance with the wishes of the Director.

Considering these factual circumstances, does the statute and the regulation give the Director the discretion to withhold the permit for prospective operations based upon past performance? We must answer in the negative.

This Court recently reaffirmed that administrative agencies and their executive officers are creatures of statute and delegates of the Legislature:

> "Their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. They have no general or common-law powers but only such as have been conferred upon them by law expressly or by implication." *Walter v. Ritchie*, 156 W.Va. 98, 191 S.E.2d 275, 279 (1972).

It is clear that the Director's discretion to regulate the operation of landfills operates prospectively, that is, he has the right to control, suspend or terminate noncomplying landfill operations conducted subsequent to the approval of the permit. The Director has no right to prevent inception of business by an otherwise qualifying applicant based upon the past experience of the health department with an employee of the applicant.

The writ must be awarded. Where the duty of the Director of Health to issue an approval is so plain in point of law and so clear in matter of fact that no element of discretion is left as to the precise mode of its performance, such duty is ministerial, and a writ of mandamus is proper to compel its performance. *Walter v. Ritchie, supra.*

As to the legal contention of the respondent Director regarding petitioner's failure to exhaust administrative remedies, it is obvious that further pursuit of administrative remedies before the Director will be unavailing. The Director has not provided the petitioner with an alternative means of complying with his wishes. Again, this case is ruled by the principles enunciated in *Walter v. Ritchie, supra,* syllab. point 4:

> "Mandamus will lie to compel performance of a nondiscretionary duty of an administrative officer though another remedy exists, where it appears that the official, under misapprehension of law, refuses to recognize the nature and scope

of his duty and proceeds on the belief that he has discretion to do or not to do the thing demanded of him."

The demurrer to the petition is overruled and the writ applied for is awarded.

*Writ awarded.*