376 S.E.2d 317

**APPALACHIAN REGIONAL HEALTH CARE, INC. dba Beckley Appalachian Regional Hospital**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Anne D. Hooper.**

No. 18197.

Supreme Court of Appeals of West Virginia.

Dec. 15, 1988.

Michael T. Chaney, Kay, Casto & Chaney, Charleston, for appellant.

Regina L. Charon, Morgantown, for Anne D. Hooper.

Antoinette Eates, Asst. Atty. Gen., Charleston, for HRC.

**304**

BROTHERTON, Justice:

This proceeding involves an appeal by the Beckley Appalachian Regional Hospital (Hospital) from the September 11, 1987, order of the West Virginia Human Rights Commission, which found the Hospital unlawfully discriminated against the complainant, Anne D. Hooper, M.D. The Hospital contends that the Human Rights Commission did not have jurisdiction to enter this order since the case, along with an earlier Human Rights complaint, were closed by order dated May 23, 1979.

The complainant-respondent, Anne D. Hooper, is a physician who was first employed as chief pathologist at the Williamson Appalachian Regional Hospital in 1971. At her request, Dr. Hooper was transferred to the Beckley Appalachian Regional Hospital in 1974, where she became a staff pathologist. On January 1, 1976, Dr. Hooper was promoted to the position of chief of pathology at the Beckley Appalachian Regional Hospital by the Hospital Administrator, David Elliott. As chief of pathology, Dr. Hooper was under the control of the hospital administrator, although she had the ultimate responsibility for insuring the proper functioning and staffing of the pathology laboratory.

In the fall of 1976, Dr. Zarina Rasheed, a female pathologist working under Dr. Hooper, complained to Mr. Elliott that the pathology laboratory was not sufficiently staffed so that a pathologist was available at all times. Dr. Rasheed later testified that Dr. Hooper was frequently absent from the laboratory.[1] The Hospital points to a memo dated December 6, 1976, wherein Dr. Hooper wrote "I cannot get overly concerned that coverage is less than ideal"

as indicative of her attitude about the problem.[2]

On November 8, 1976, Dr. Hooper filed her first human rights complaint against the Hospital, complaining of sex discrimination and harassment (Human Rights Commission Docket No. ES–163–77). Dr. Hooper charged that the Executive Committee and the Administration of the Hospital had ordered her to recruit someone else for the position she held. She alleged that Dr. James Yates told her that the Executive Committee wanted her to step down as director of the pathology laboratory so that a man could be hired.[3] Dr. Yates denied making that statement.

In late November or early December of 1976, Dr. Hooper discussed with the Administrator her desire to become a member of the Red Cross Advisory Board. In a memo to Dr. Hooper dated December 6, 1976, Mr. Elliott advised Dr. Hooper that she should not accept an appointment to the Red Cross Advisory Board due to the workload at the pathology laboratory.[4] Dr. Hooper admitted that she received the memorandum, but attended the meeting despite his instructions.

By letter to the complainant dated December 10, 1976, Mr. Elliott terminated Dr. Hooper's employment at the Hospital. In the letter, Mr. Elliott cited the complainant's unscheduled absences and her disregard of his instructions as reasons for the termination.[5] Upon the termination of Dr. Hooper's employment, Dr. Zarina Rasheed, a female pathologist, was appointed acting chief of pathology at the Hospital. Dr. Rasheed became the chief of pathology after she received her Board Certification. She currently holds that position.

1. *See* Transcript of Hearing, November 11, 1985 at pp. 288–89.

2. *See* Joint Exhibit 16.

3. The Hospital responded that Dr. Yates was not employed by, and did not represent, the administration of the Hospital. The Executive Committee, of which the complainant was a member, was a group of physicians selected by all of the physicians who had staff privileges at the Hospital for the purpose of representing the physicians in their dealing with the Hospital

administration. The Executive Committee had no authority to hire or fire, but could make recommendations as such.

4. *See* Joint Exhibit 7.

5. *See* Joint Exhibit 8. In July, 1977, Dr. Hooper accepted a position at the School of Osteopathic Medicine in Lewisburg, West Virginia, and has been employed there since that time. Dr. Hooper has maintained staff privileges at the Beckley Appalachian Regional Hospital.

On December 23, 1976, the complainant filed a second human rights complaint against the Hospital (Human Rights Commission Docket No. ES–216–77). She specifically alleged that the termination of her employment on December 10, 1976, was in retaliation of the sex discrimination complaint filed in November of 1976.

On November 16, 1977, the Human Rights Commission issued an initial determination finding probable cause with regard to the second complaint. However, no further proceedings were held with regard to either complaint. Thereafter, by order dated May 23, 1979, the Human Rights Commission stated that:

> Upon a review of all of the evidence gathered by the Commission staff during the investigation, the Investigating Commissioner was of the opinion that the circumstances did not warrant taking these cases to public hearing and recommended same to the full Commission. On May 12, 1979, the West Virginia Human Rights Commission concurred with the Investigating Commissioner's recommendation. Therefore it is ORDERED that the above-styled administrative case be closed and dismissed.

Dr. Hooper did not file an appeal to this order, nor did she request a rehearing.[6]

There was no further action in either claim until May 1, 1985, when the Human Rights Commission entered an order stating that "it appears that the above styled cases were in fact erroneously closed and should now be reopened." The order reopened the two human rights complaints without request from or notice to either party.

The Hospital filed an answer, including a motion to dismiss for lack of jurisdiction since the complaints had been dismissed six years earlier and because of "inordinate and unfair delay" in bringing the matters to hearing.[7] The Commission took no ac-

tion on that motion, but referred the matter to a hearing examiner for a hearing on the merits.

Upon the agreement of the parties, the hearings were bifurcated into issues of liability and damages. The first hearing on the liability issue was held on November 11, 1985. As proof of discrimination, Dr. Hooper alleged that she was treated differently from Dr. Manfred S. Prenzlau, M.D., a male hospital employee, by the Hospital administrator.

Following the liability hearing, the Human Rights hearing examiner made a recommended finding that the Hospital had discriminated against Dr. Hooper on the basis of sex as alleged in the first complaint, and had engaged in reprisals against her as alleged in the second complaint. By order dated April 21, 1986, the Human Rights Commission adopted the hearing examiner's recommended decision. The Hospital filed a timely motion for reconsideration, raising the issue of lack of jurisdiction. By a subsequent order dated October 22, 1986, the Commission denied the Hospital's motion for reconsideration.

The hearing examiner then proceeded with the final hearing on the issue of damages. Counsel for the complainant filed a proposed order with respect to the damages. The Hospital filed objections to the proposed order, again raising the substantive issue of jurisdiction. The hearing examiner issued a recommended decision dated November 21, 1986, which adopted the complainant's proposed order. The Hospital made timely exceptions.

By final order dated September 11, 1987, the Human Rights Commission awarded compensatory damages for the period subsequent to May, 1979, including $165,858.64 in lost wages and actual damages with interest, $5,000.00 for "embarrassment," $17,365.45 in attorney's fees and costs, and

---

6. The Hospital reports that the charge of retaliation was also investigated by the Federal Equal Employment Opportunity Commission. In a determination dated May 1, 1980, the EEOC concluded that the examination of the evidence indicated that there was "not reasonable cause to believe that this allegation is true."

7. The Hospital's main witness, Hospital Administrator Elliott, had moved and his whereabouts were unknown.

the right of first refusal on the position of chief pathologist if it reopened.

This proceeding is the Hospital's appeal from that final order. The issue before us on appeal is whether the Human Rights Commission had the authority to reopen the two closed cases on its own motion. We find that the Human Rights Commission erred in its *sua sponte* order and accordingly, reverse the order of the Human Rights Commission.

This Court addressed the issue of the necessity of a Human Rights Commission hearing in *Currey v. State Human Rights Commission*, 166 W.Va. 163, 273 S.E.2d 77 (1980). In *Currey*, the Human Rights Commission denied a complainant's request for a hearing after probable cause had been found. After analyzing the State Administrative Procedures Act,[8] we interpreted W.Va.Code § 5–11–10 (1979) to place a nondiscretionary duty on the Human Rights Commission to proceed with a hearing once the investigating committee found probable cause, and conciliation efforts failed. 166 W.Va. at 166, 273 S.E.2d at 79.[9]

Our interpretation of W.Va.Code § 5–11–10 (1979) was refined in *Allen v. State Human Rights Commission*, 174 W.Va. 139, 324 S.E.2d 99 (1984), where several complainants petitioned this Court to require the Human Rights Commission to proceed with hearings. Noting long delays before hearings were held, we ruled that the Human Rights Commission had "a mandatory duty to place on its docket all complaints tendered that meet five criteria: (1) verification; (2) name and address of the respondent; (3) description of the alleged discriminatory action or practice; (4) other information as required in rules and regulations promulgated by the Commission; and (5) filing within ninety days after the alleged act of discrimination." Syl. pt. 5, 174 W.Va. at 141, 324 S.E.2d at 101.

The respondents contend that our decisions in *Currey* and *Allen* created an affirmative duty for the Human Rights Commission to reopen these cases since the dismissal order was entered before a hearing was held.[10] We believe the appellants misinterpret our holdings in *Currey* and *Allen*. Nothing in either opinion can be interpreted as conferring authority on the Human Rights Commission to reopen, *sua sponte*, cases previously closed.

An administrative agency possesses only as much power as is conferred by statute.[11] We defined the power of an administrative agency in *Mountaineer Disposal Service, Inc. v. Dyer*, 156 W.Va. 766, 197 S.E.2d 111 (1973), where we stated that:

Administrative agencies and their executive officers are creatures of statute and delegates of the Legislature. Their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. They have no general or common-law powers but only such as

---

**8.** W.Va.Code § 29A–1–1 et seq. (1986).

**9.** West Virginia Code § 5–11–10 (1987) provides, in part:

If it shall be determined after such investigation or meeting that probable cause exists for substantiating the allegations of the complaint, the commission shall immediately endeavor to eliminate the unlawful discriminatory practices complained of by conference, conciliation and persuasion.... In case of failure so to eliminate such practice or in advance thereof, if in the judgment of the commission circumstances so warrant, the commission shall cause to be issued and served a written notice, ... requiring the person, employer, ... to answer the charges of such complaint at a hearing before the commission.

**10.** The current fact situation is unlike that in *Allen*. In *Allen*, all but one of the cases consolidated on appeal were cases pending before the Human Rights Commission. The final case was erroneously rejected by the Human Rights Commission because of the mistaken belief that it involved the same facts as a complaint previously filed by the complainant. The Human Rights Commission later acknowledged the complaint involved a different issue and should have been docketed. None of the cases had reached a final determination and all of the petitioners had sought mandamus. In the present situation, a final determination had been reached on both of Dr. Hooper's complaints prior to dismissal. Moreover, Dr. Hooper had not objected to the dismissal, nor did she request an administrative review or file an appeal.

**11.** *See United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950).

have been conferred upon them by law expressly or by implication.

Syl. pt 3, 156 W.Va. at 766, 197 S.E.2d at 112.

We find nothing in the State Administrative Procedures Act, W.Va.Code § 29A–1–1 et seq. (1986), or the Human Rights Commission's administrative rules which vests the Human Rights Commission with the authority to reopen, *sua sponte*, a case previously closed. Moreover, the respondents were unable to point to any case law conferring that authority, and, in fact, conceded there was no specific provision permitting the reopening of a closed case.

This Court, therefore, follows the general rule that absent specific statutory authority, an administrative agency cannot reopen a closed proceeding.[12] In *Administrative Law in West Virginia*, Professor Alfred Neely pointed out that:

> It is generally established in West Virginia that before an entirely final administrative adjudication may be reopened, *there must be a statute permitting the practice and defining the circumstances under which it will be available.* It is unlikely that an agency on its own initiative could provide for reopening by adoption of a procedural rule, since more is at stake than the interest of the agency. The interests of the judiciary are involved as well. Indeed, even with a statute authorizing reopening, there is no assurance that the statute will not suffer constitutional infirmities.... Perhaps the absence of cases in other areas, where there are no express statutory provisions providing for reopening, indicates widespread acceptance of the assumption that a case may not be reopened as a matter of administrative or judicial discretion. Certainly, that is the principle which traditionally governs the judiciary.... It would seem that the common assumption is that an administrative body acting in a judicial capacity

is and should be subject to similar constraints. (Emphasis added.)

*Id.* at 410–13.[13] We believe that to permit an agency to reopen a case at its discretion would disrupt the orderly disposition of cases and the parties' justified reliance that the case was closed.

This Court is aware that Dr. Hooper sat on her rights by failing to file an objection or appeal to the dismissal order in 1979. The substantial reliance interest of the Hospital, or any party to a human rights case who believed the matter closed, cannot be ignored. We do not believe Dr. Hooper should be rewarded, to the Hospital's detriment, for her failure to act on her rights.[14]

Accordingly, we conclude that the Human Rights Commission was without authority to reopen, *sua sponte*, a case properly closed. .We reverse the decision of the Human Rights Commission and order the action dismissed.

REVERSED.

---

**12.** *See Mustard v. City of Bluefield,* 130 W.Va. 763, 45 S.E.2d 326 (1947), where this Court held that a municipal zoning board lacked the power to reopen and reconsider a matter previously determined.

**13.** A. Neeley, *Administrative Law in West Virginia* § 5.49 (1982). Neeley also discusses administrative reopening in the context of workers'

compensation cases. *Id.* at 411–13. *See also Hubbard v. State Workers' Compensation Commissioner and Pageton Coal Co.,* 170 W.Va. 572, 578–80, 295 S.E.2d 659, 665–66 (1981).

**14.** *See O'Neil v. Northern Colorado Irrigation Co.,* 242 U.S. 20, 26, 37 S.Ct. 7, 8, 61 L.Ed. 123, 128 (1916).