505 S.E.2d 662

**John Christopher COLL, Petitioner Below, Appellee,**

v.

**Jane L. CLINE, Commissioner of the West Virginia Division of Motor Vehicles, Respondent Below, Appellant.**

**No. 24973.**

Supreme Court of Appeals of West Virginia.

Submitted June 2, 1998.

Decided June 24, 1998.

Darrell V. McGraw, Jr., Attorney General, Jacquelyn I. Custer, Senior Assistant Attorney General, Charleston, for Appellant.

James A. Matish, Clarksburg, for Appellee.

DAVIS, Chief Justice:

In this case, the Commissioner of the West Virginia Division of Motor Vehicles appeals an order of the Circuit Court of Harrison County that reversed a final order of the Commissioner revoking the driver's license of John C. Coll. The Commissioner argues that the circuit court erred in concluding that the results of a secondary chemical test to determine the blood alcohol concentration of an individual who has been arrested for driving under the influence of alcohol are a jurisdictional prerequisite to the Commissioner's authority to revoke that person's driver's license. We agree with the Commissioner. Therefore, we reverse the July 18, 1997, order of the Circuit Court of Harrison County, and reinstate the final order of the Commissioner of the West Virginia Division of Motor Vehicles, entered January 15, 1997.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On November 20, 1995, Stephen Davies–Williams, an officer of the Bridgeport, West Virginia, Police Department, observed a speeding vehicle. Officer Davies–Williams engaged his emergency lights and siren in an attempt to stop the vehicle. Instead of stopping, the driver of the vehicle continued traveling for approximately one-and-one-half miles at speeds sometimes approaching seventy miles per hour. Ultimately, the officer stopped the car and identified its driver as John Christopher Coll, the appellee herein and petitioner below. Officer Davies–Williams observed a strong odor of alcohol emanating from Coll. The officer further observed that Coll's speech was slurred, his eyes were red and he was unsteady on his feet. Coll was given three structured field sobriety tests by Officer Davies–Williams: the one-leg stand test, the walk-and-turn test, and the horizontal gaze nystagmus test. Coll was instructed on how to perform each test, and he indicated that he understood the instructions. However, Coll proceeded to fail all three tests. Consequently, he was placed under arrest for driving under the influence of alcohol [hereinafter DUI] and was transported to the Bridgeport Police Station.[1]

When Coll arrived at the Police Station, he was read the relevant portion of an Implied Consent Statement regarding a secondary chemical test to determine his blood alcohol content.[2] In this case, the secondary chemical test was the Intoxilyzer 5000 test, which utilizes a person's breath to measure his/her blood alcohol content. Coll signed the Implied Consent form, thereby agreeing to submit to the Intoxilyzer test. In addition, Coll was read his *Miranda* rights and agreed to answer questions without the presence of an attorney. He was asked whether he had been operating a motor vehicle and whether he had been drinking. He answered both questions affirmatively. Thereafter, Officer R.F. Fernandez of the Brigdeport Police Department administered the Intoxilyzer 5000 test. The test results revealed that Coll had a blood alcohol content of .257.[3]

---

**1.** This was Coll's second DUI arrest within a ten-year period.

**2.** Pursuant to W.Va.Code § 17C–5–4 (1994) (Repl.Vol.1996), each law-enforcement agency is required to designate a secondary chemical test, of blood, breath or urine, which shall be administered at the direction of the arresting law-enforcement officer.

**3.** Under W.Va.Code § 17C–5–2(d) (1996) (Repl. Vol.1996), driving with a blood alcohol content of .10 or greater is illegal in this State. The same was true at the time of Coll's arrest. *See*

Subsequent to the above-described events, Officer Davies–Williams submitted a "STATEMENT OF ARRESTING OFFICER" to the West Virginia Division of Motor Vehicles [hereinafter sometimes "DMV" or "the Division"], pursuant to W.Va.Code § 17C–5A–1(b) (1994) (Repl.Vol.1996).[4] However, Officer Davies–Williams failed to attach to the report a copy of the Intoxilyzer 5000 test results, which is also required by W.Va.Code § 17C–5A–1(b).[5] The statement reported that Officer Davies–Williams had arrested Coll on November 20, 1995, for DUI. Based upon this statement, Jane L. Cline, Commissioner of the Division of Motor Vehicles, [hereinafter "Commissioner Cline" or "the Commissioner"] issued a preliminary order on December 8, 1995, revoking Coll's license to drive in West Virginia.

Coll then requested an administrative hearing to challenge the revocation and the results of the Intoxilyzer 5000 test administered by the Bridgeport Police Department, as permitted by W.Va.Code § 17C–5A–2 (1994) (Cum.Supp.1995).[6] The order of revocation was then stayed pending resolution of the administrative hearing. W.Va.Code § 17C–5A–2(a) (1994) (Cum.Supp.1995).[7] The hearing was held on February 26, 1996, before Robert L. DeLong, Hearing Examiner. At the outset of the administrative hearing, counsel for Coll objected to the jurisdiction of the Commissioner to enter a revocation order based upon an arresting officer's statement that was not accompanied by a copy of the secondary chemical

test results. The objection was overruled by the hearing examiner. The hearing proceeded. During the hearing, the examiner heard testimony relating the facts described above, including the results of the Intoxilyzer test. After considering the evidence presented and the arguments of the parties, the hearing examiner submitted to Commissioner Cline detailed findings of fact and conclusions of law, and recommended that "the Commissioner conclude as a matter of law that John C. Coll committed an offense described in W.Va.Code 17C–5–2 Cum.Supp. (1995), in that John C. Coll drove a motor vehicle in this State, while under the influence of alcohol." Based upon Examiner DeLong's findings and conclusions, by final order entered on January 15, 1997, Commissioner Cline revoked Coll's privilege to drive a motor vehicle in this state "for a period of ten years and thereafter until he successfully completes the Safety and Treatment Program; [and] pays [certain designated] costs."

Coll then appealed Commissioner Cline's final order to the Circuit Court of Harrison County. Initially, the circuit court stayed the execution of Commissioner Cline's final order revoking Coll's driving privileges. Thereafter, by order entered July 18, 1997, the circuit court reversed Commissioner Cline's order. The circuit court based its conclusion upon its finding that a copy of the printed results of the Intoxilyzer test was not attached to the "STATEMENT OF AR-

---

W.Va.Code § 17C–5–2(d) (1995) (Cum.Supp. 1995).

4. W.Va.Code § 17C–5A–1(b) (1994) (Repl.Vol. 1996) states:

> Any law-enforcement officer arresting a person for an offense described in section two, [§ 7C–5–2], article five of this chapter or for an offense described in a municipal ordinance which has the same elements as an offense described in said section two of article five *shall report to the commissioner of the division of motor vehicles by written statement* within forty-eight hours the name and address of the person so arrested. The report shall include the specific offense with which the person is charged, *and, if applicable, a copy of the results of any secondary tests of blood, breath or urine.* The signing of the statement required to be signed by this subsection shall constitute an oath or affirmation by the person signing the

> statement that the statements contained therein are true and that any copy filed is a true copy. The statement shall contain upon its face a warning to the officer signing that to willfully sign a statement containing false information concerning any matter or thing, material or not material, is false swearing and is a misdemeanor.
>
> (Emphasis added).

5. See *supra* note 4.

6. W.Va.Code § 17C–5A–2 (1994) (Cum.Supp. 1995) was amended in 1996. However, the amendment did not substantively change the statutory provisions relevant to the issues herein addressed. *See* W.Va.Code § 17C–5A–2 (1996) (Repl.Vol.1996).

7. See *supra* note 6.

RESTING OFFICER" submitted to the Division as required by W.Va.Code § 17C–5A–1(b).

The court observed that Commissioner Cline's preliminary revocation order, which was issued December 8, 1995, was based solely upon the "STATEMENT OF ARRESTING OFFICER." The court found that W.Va.Code § 17C–5A–1(c)[8] "clearly puts a mandatory duty on the Commissioner to examine not only the statement [of the arresting officer] but also the test results of the secondary chemical test in order to establish that the necessary facts are present in order for her to enter an Order of Revocation." One of the "necessary facts" referred to is the requirement that the Commissioner determine that "the results of any secondary test or tests indicate that at the time the test or tests were administered the person had, in his or her blood, an alcohol concentration of ten hundredths of one percent or more by weight." W.Va.Code § 17C–5A–1(c). Without the secondary chemical test results, the circuit court reasoned, Commissioner Cline could not ascertain whether Coll's blood alcohol content had exceeded the lawful limit. Because Commissioner Cline was without a copy of the secondary chemical test at the time she issued her preliminary revocation order, thereby preventing her from fulfilling the requirements of W.Va.Code § 17C–5A–1(c), the circuit court concluded that "[t]he ruling of the Commissioner was based upon an unlawful procedure and outside her jurisdiction." It is from this order that the Commissioner now appeals.[9]

## II.

## STANDARD OF REVIEW

■ We have previously set forth the standard to be applied by a circuit court when it reviews an order issued by an administrative agency:

" ' "Upon judicial review of a contested case under the West Virginia Administrative Procedure[s] Act, Chapter 29A, Article 5, Section 4(g), the circuit court may

affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.' " Syl. Pt. 2, *Shepherdstown Volunteer Fire Department v. State ex rel. State of West Virginia Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983).' Syllabus Point 1, *St. Mary's Hospital v. State Health Planning and Development Agency*, 178 W.Va. 792, 364 S.E.2d 805 (1987)." Syl. pt. 1, *HCCRA v. Boone Memorial Hospital*, 196 W.Va. 326, 472 S.E.2d 411 (1996).

Syl. pt. 3, *West Virginia Div. of Envtl. Protection v. Kingwood Coal Co.*, 200 W.Va. 734, 490 S.E.2d 823 (1997) (alteration in original). *See also* W.Va.Code § 29A–5–4g (1964) (Repl.Vol.1993).

We are now asked to determine whether the circuit court properly employed these standards. However, the specific question before us, whether the results of a secondary chemical test to determine the blood alcohol concentration of an individual who has been arrested for driving under the influence of alcohol are a jurisdictional prerequisite to the Commissioner's authority to revoke a driver's license, is purely legal. Consequently, we apply a *de novo* standard of review. Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court

---

**8.** See *infra* note 10 for text of W.Va.Code § 17C–5A–1(c) (1994) (Repl.Vol.1996).

**9.** Joe E. Miller succeeded Jane L. Cline as Commissioner of the West Virginia Division of Motor

Vehicles. Therefore, Commissioner Miller, as Commissioner Cline's successor, has pursued this appeal.

is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With these principles in mind, we proceed to consider the issues presented.

## III.

## DISCUSSION

The issue we are asked to address is whether the circuit court erred in finding that the Commissioner was without jurisdiction to revoke Coll's driving privileges because she was without a copy of the secondary chemical test at the time she issued her preliminary revocation order, thereby preventing her from fulfilling the requirements of W.Va.Code § 17C–5A–1(c) (1994) (Repl. Vol.1996).[10]

The Commissioner argues that the results of a secondary chemical test for determining blood alcohol concentration are not a jurisdictional prerequisite for issuing a preliminary order revoking the license of a driver arrested for operating a motor vehicle while under the influence of alcohol. Citing Syl. pt. 1, *Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984) ("There are no provisions in either W.Va.Code, 17C–5–1 (1981), *et seq.*, or W.Va. Code, 17C–5A–1 (1981), *et seq.*, that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol or drugs for purposes of making an administrative revocation of his driver's license."). *See also* Syl.

pt. 2, *Id.* ("Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol."). Therefore, the Commissioner contends, the failure of an arresting officer to include secondary chemical test results with his/her .written statement does not deprive the Commissioner of jurisdiction to revoke driving privileges.

The Commissioner notes that the language of W.Va.Code § 17C–5A–1(c) contains two alternative bases for license revocation. The Commissioner is required to revoke the license of an individual when the Commissioner's examination of the arresting officer's written report reveals that the individual was arrested for an offense described in W.Va. Code § 17C–5–2 (1996) (Repl.Vol.1996) [11] or a similar municipal offense and "[ (1) ] the results of any secondary test or tests indicate … an alcohol concentration of ten hundredths of one percent or more, by weight, *or* [ (2) ] at the time the person was arrested he or she was under the influence of alcohol, controlled substances or drugs." W.Va.Code § 17C–5A–1(c) (emphasis added).

The Commissioner further contends that under the circuit court's interpretation of W.Va.Code § 17C–5A–1(c), license revocation

10. W.Va.Code § 17C–5A–1(c) (1994) (Repl.Vol. 1996) states:

If, upon examination of the written statement of the officer and the tests [sic] results described in subsection (b) of this section, the commissioner shall determine that a person was arrested for an offense described in section two, article five of this chapter or for an offense described in a municipal ordinance which has the same elements as an offense described in said section two of article five, and that the results of any secondary test or tests indicate that at the time the test or tests were administered the person had, in his or her blood, an alcohol concentration of ten hundredths of one percent or more, by weight, or at the time the person was arrested he or she was under the influence of alcohol, controlled substances or drugs, the commissioner shall make and enter an order revoking the person's license to operate a motor vehicle in this state.

If the results of the tests indicate that at the time the test or tests were administered the person was under the age of twenty-one years and had an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than ten hundredths of one percent, by weight, the commissioner shall make and enter an order suspending the person's license to operate a motor vehicle in this state. A copy of the order shall be forwarded to the person by registered or certified mail, return receipt requested, and shall contain the reasons for the revocation or suspension and describe the applicable revocation or suspension periods provided for in section two [§ 17C–5A–2] of this article. No revocation or suspension shall become effective until ten days after receipt of a copy of the order.

11. W.Va.Code § 17C–5–2 (1996) (Repl.Vol.1996) prohibits driving under the influence of alcohol, controlled substances or drugs.

would be limited to cases where a secondary chemical test had been administered. This, the Commissioner maintains, is contrary to the West Virginia statutory and case law cited above. Furthermore, the Commissioner submits, the circuit court's decision does not comport with the public policy upon which DUI laws are predicated, namely protecting the innocent public from dangerous drivers. Citing *Stalnaker v. Roberts*, 168 W.Va. 593, 599, 287 S.E.2d 166, 169 (1981).

The Commissioner further challenges the circuit court's reliance on *Dolin v. Roberts*, 173 W.Va. 443, 317 S.E.2d .802 (1984), arguing that there is nothing in *Dolin* that suggests an officer's failure to comply with the requirement of attaching secondary chemical test results to his/her statement to the DMV is jurisdictional in nature. According to the Commissioner, *Dolin* instructs that circuit courts should not attempt to enforce against the Commissioner statutory requirements expressly applicable to the arresting officer.[12]

Finally, the Commissioner argues that any error resulting from the arresting officer's failure to submit the secondary chemical test results was harmless. The Commissioner contends that Coll has never alleged or demonstrated that his ability to present his case at the administrative level was prejudiced by the omission of the test results. Although Coll raised a jurisdictional challenge to the administrative proceedings on the ground that the test results were not attached to the statement from the arresting officer, Coll did not seek to suppress the test results on those grounds.

In response to the Commissioner's contentions, Coll first argues that since a secondary chemical test was administered, the arresting officer was mandated to attach the results of that test to the "STATEMENT OF ARRESTING OFFICER" and submit both documents to the Commissioner within forty-eight hours of the arrest. W.Va.Code § 17C–5A–1(b). Furthermore, Coll argues, W.Va.Code § 17C–5A–1(c) clearly requires that before the Commissioner can enter a revocation order, he/she must first examine "the written statement of the officer *and* the tests [sic] results described in subsection (b) of this section." (Emphasis added). In addition, the Commissioner must confirm that the test results indicate a blood alcohol concentration of "ten hundredths of one percent or more, by weight." W.Va.Code § 17C–5A–1(c). Coll argues that these provisions are mandatory.

Coll concedes that there is no requirement for a chemical test in a DUI case; however, he argues that once a test is given, it must be used as the basis for revocation. This position is supported by the fact that the arresting officer is compelled to attach the results of such a test to his written statement to the Commissioner. Moreover, Coll contends that when a person's driving privileges are revoked in the absence of a secondary chemical test, there must be some additional information, possibly in the form of an affidavit, providing objective evidence of intoxication, in order for the Commissioner to determine that the person was under the influence of alcohol, controlled substances or drugs. W.Va.Code § 17C–5A–1(c).

Finally, Coll notes that the arguments advanced by the driver in *Albrecht v. State* were centered around the requirement of the State to administer the secondary chemical test, which is not the issue in the present case. Here the test was administered and, therefore, must be considered by the Commissioner. Furthermore, Coll argues, without the secondary chemical test results, the information contained in the arresting officer's statement was insufficient upon which to base a revocation.[13]

---

**12.** In *Dolin v. Roberts*, 173 W.Va. 443, 317 S.E.2d 802 (1984), the arresting officer submitted his statement to the Commissioner within the required time frame, but omitted the results of a secondary chemical test. After the DMV returned the statement, the officer resubmitted it with the test results attached. Granting a writ of prohibition, the Circuit Court of Boone County found the twenty-week delay between Dolin's arrest and the subsequent suspension of his driving privileges violated his procedural due process rights. On appeal, this Court concluded that the time requirements for filing the arresting officer's statement applied only to the officer, and had no application to the Commissioner.

**13.** Coll also contends that the petition presented by the Commissioner is moot, based upon a July 28, 1997, letter from the Commissioner withdrawing the order of revocation or suspension.

Having reviewed the relevant statutes and case law, the record on appeal and the parties' arguments, we conclude that the Commissioner erred by revoking Coll's license without having first reviewed the secondary chemical test results; however, that error was harmless. In reaching this conclusion, we first address whether a secondary chemical test for determining a person's blood alcohol content is a jurisdictional prerequisite to a preliminary driver's license revocation by the Commissioner as a penalty for driving under the influence of alcohol. We find that it is not.

### A.

### Commissioner's Jurisdiction

 The West Virginia Division of Motor Vehicles was created by statute. *See* W.Va.Code § 17–5A–2 (1947) (Repl.Vol.1949) (creating Department [14] of Motor Vehicles); W.Va.Code § 17A–2–1 (1951) (Repl.Vol.1996) (continuing Department [15] of Motor Vehicles). As such, its powers, as well as the powers of the Commissioner, derive from statutes: [16]

" 'Administrative agencies and their executive officers are creatures of statute and delegates of the Legislature. Their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. They have no general or common-law powers but only such as have been conferred upon them by law expressly or by implication.' Syl. pt. 3, *Mountaineer Disposal Service, Inc. v. Dyer*, 156 W.Va. 766, 197 S.E.2d 111 (1973)." Sylla-

bus Point 3, *Appalachian Regional Health Care, Inc. v. W.Va. HRC*, 180 W.Va. 303, 376 S.E.2d 317 (1988).

Syl. pt 1, *Francis O. Day Co., Inc. v. West Virginia Reclamation Bd. of Review*, 188 W.Va. 418, 424 S.E.2d 763 (1992).

Following the foregoing principles, we must look to the relevant statute to determine the Commissioner's jurisdiction to preliminarily revoke a driver's license for driving under the influence of alcohol. At the outset, we note that:

"Jurisdiction" in regard to administrative agencies generally may be defined as power given by law to hear and decide controversies. In administrative law the term jurisdiction has three aspects: (1) personal jurisdiction, referring to the agency's authority over the parties and intervenors involved in the proceedings; (2) subject matter jurisdiction, referring to an agency's power to hear and determine the causes of a general class of cases to which a particular case belongs; and (3) the agency's scope of authority under statute.

2 Am.Jur.2d *Administrative Law* § 274, at 291 (1994) (footnotes omitted). In the case *sub judice*, there is no challenge to the Commissioner's personal jurisdiction over Coll.[17] Consequently, it is subject matter jurisdiction and the Division's scope of authority which must be determined.

 We have previously explained that "[j]urisdiction relates to the power of a court, board or commission *to hear and determine a controversy presented to it*, and not to the

---

We find this argument to be without merit. The referenced letter states that the revocation or suspension was withdrawn due to the order of the Circuit Court. The letter obviously was issued in an effort to comply with the order that is presently challenged on appeal.

**14.** The former "Department of Motor Vehicles" is currently designated as the "Division of Motor Vehicles." *See* W.Va.Code § 5F–2–1(j) (1992) (Repl.Vol.1993); W.Va.Code § 5F–2–1(g)(4) (1992) (Repl.Vol.1993).

**15.** See *supra* note 14.

**16.** While we have recognized that an administrative agency and its executive officers also possess " 'in addition to the powers expressly conferred

by statute, such powers as are reasonably and necessarily implied in the exercise of [their] duties in accomplishing the purposes of the act[,]' " *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 120, 492 S.E.2d 167, 179 (1997) (citations omitted), there is no issue involving implied powers of the Division of Motor Vehicles before us in this case.

**17.** Coll impliedly consented to the personal jurisdiction of the Division by obtaining a license to operate a vehicle in West Virginia and by driving in this state. *See* W.Va.Code § 17C–5A–1(a) (1994) (Repl.Vol.1996).

right of recovery as between the parties thereto." Syl. pt. 1, *Fraga v. State Compensation Comm'r,* 125 W.Va. 107, 23 S.E.2d 641 (1942) (emphasis added). *See also State ex rel. City of Huntington v. Lombardo,* 149 W.Va. 671, 680–81, 143 S.E.2d 535, 542 (1965) (same). In other words, jurisdiction refers to the *type* or *nature* of cases over which a court, board or, in this case, administrative agency has the power to preside.

The powers and duties of the Commissioner of the Division of Motor Vehicles are set forth in W.Va.Code § 17A–2–9 (1951) (Repl. Vol.1996), which states in relevant part:

(a) The commissioner is hereby vested with and is charged with the duty of observing, administering and *enforcing the provisions of this chapter and of all laws the enforcement of which is now or hereafter vested in the department:* Provided, however, That nothing in this chapter shall deprive the public service commission of West Virginia of any of the duties or powers now vested in it with regard to the regulation of motor vehicle carriers.

(Emphasis added). As noted above, subject matter jurisdiction means, generally, jurisdiction over the *nature* of the claim. Considering the above-quoted statute in light of this general principle, it is apparent that this provision grants the Commissioner the authority, and therefore vests in him/her the subject matter jurisdiction, to "enforc[e] . . . all laws the enforcement of which is now or hereafter vested in the department." The provisions of W.Va.Code § 17C–5A–1(c) [18] require the Commissioner to enforce W.Va. Code § 17C–5–2, which prohibits driving under the influence of alcohol, controlled substances or drugs, by mandating that the Commissioner revoke the driver's license of individuals violating that section of the Code. Thus, the Commissioner's decisions under 17C–5A–1(c) are within the jurisdictional province of W.Va.Code § 17A–2–9 in that such decisions are rendered to enforce a law the enforcement of which is vested in the division. Therefore, we conclude that the Commissioner had the authority and the jurisdiction to consider the revocation of Coll's license to drive.

With respect to the specific statutory question presented by the parties, however, we conclude that while Commissioner Cline had jurisdiction to *consider* revoking Coll's license, the actual revocation was defective. W.Va.Code § 17C–5A–1(c) requires that:

If, upon examination of the written statement of the officer and the tests [sic] results described in subsection (b) of this section, the commissioner shall determine that a person was arrested for an offense described in section two, article five of this chapter or for an offense described in a municipal ordinance which has the same elements as an offense described in said section two of article five, and that the results of any secondary test or tests indicate that at the time the test or tests were administered the person had, in his or her blood, an alcohol concentration of ten hundredths of one percent or more, by weight, or at the time the person was arrested he or she was under the influence of alcohol, controlled substances or drugs, the commissioner shall make and enter an order revoking the person's license to operate a motor vehicle in this state. . . . A copy of the order shall be forwarded to the person by registered or certified mail, return receipt requested, and shall contain the reasons for the revocation or suspension and describe the applicable revocation or suspension periods provided for in section two [§ 17C–5A–2] of this article. No revocation or suspension shall become effective until ten days after receipt of a copy of the order.

Having previously determined that the Commissioner's jurisdiction derives from W.Va.Code § 17A–2–9, we find that the above-quoted statute outlines the procedural and evidentiary requirements for revocation. The specific language of the statute provides alternative evidentiary bases for revoking a driver's license. Once the Commissioner has received the written statement of the arresting officer, he/she may revoke a license based upon his/her determination that "the results of any secondary test or tests indicate that at the time the test or tests were administered

**18.** See *supra* note 10 for text of W.Va.Code § 17C–5A–1(c).

the person had, in his or her blood, an alcohol concentration of ten hundredths of one percent or more, by weight" or that "at the time the person was arrested he or she was under the influence of alcohol, controlled substances or drugs." W.Va.Code § 17C–5A–1(c). The second option clearly anticipates that a secondary chemical test may not be available.[19] In fact, we have previously observed that "[d]riving under the influence of alcohol and driving with an alcoholic concentration of .10 percent are separate grounds for suspension of a driver's license." *Albrecht v. State*, 173 W.Va. 268, 271, 314 S.E.2d 859, 862 (1984) (interpreting the language of W.Va.Code § 17C–5A–1(a) (1981)).[20] In Syllabus point one of *Albrecht* we reviewed an older version of the W.Va.Code and held:

> There are no provisions in either W.Va. Code, 17C–5–1 (1981), *et seq.*, or W.Va. Code, 17C–5A–1 (1981), *et seq.*, that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol or drugs for purposes of making an administrative revocation of his driver's license.

■ The sections of the West Virginia Code that are referenced in the above quoted syllabus point have been substantially altered since that holding was announced. However, we have thoroughly reviewed the present versions of those sections and find nothing in them to cause us to alter our previous ruling. Consequently, we modernize that ruling by holding that there are no provisions in either

W.Va.Code, 17C–5–1, *et seq.*, or W.Va.Code, 17C–5A–1, *et seq.*, that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol, controlled substances or drugs for purposes of making an administrative revocation of his or her driver's license.

Furthermore, under W.Va.Code § 17C–5–2(d) (1996) (Repl.Vol.1996), the provision under which Coll was arrested, driving under the influence of alcohol and driving with a blood alcohol concentration of .10% or more are designated as separate offenses.[21] Because the Commissioner clearly has the authority to revoke a license in the presence or absence of a secondary chemical test, the existence of such a test is not a jurisdictional requirement. We therefore hold that, under the provisions of W. Va.Code § 17C–5A–1(c) (1994) (Repl.Vol.1996), the results of a secondary chemical test, administered to determine the blood alcohol concentration of a person who has been arrested for driving under the influence of alcohol, are not a jurisdictional prerequisite to the authority of the Commissioner of the West Virginia Division of Motor Vehicles to consider revoking that persons driver's license.

### B.

### *Evidentiary Requirements of W.Va.Code § 17C–5A–1(c)*

■ This does not conclude our analysis, however. Although the results of the secondary chemical test are not a jurisdic-

---

**19.** During oral argument, counsel for the Commissioner speculated that a secondary chemical may not be available when, for example, the machine malfunctioned or it was not possible to administer the test within the necessary period of time.

**20.** W.Va.Code § 17C–5A–1(a) has been substantially amended since 1981; however, the language of the present version similarly establishes that driving under the influence of alcohol and driving with a blood alcohol concentration of .10% provide separate grounds for license revocation.

**21.** W.Va.Code § 17C–5–2(d) (1996) (Repl.Vol. 1996) states:

(d) Any person who:
(1) Drives a vehicle in this state while:

(A) *He is under the influence of alcohol; or*
(B) He is under the influence of any controlled substance; or
(C) He is under the influence of any other drug; or
(D) He is under the combined influence of alcohol and any controlled substance or any other drug; or
(E) *He has an alcohol concentration in his or her blood of ten hundredths of one percent or more, by weight;*
(2) Is guilty of a misdemeanor, and, upon conviction thereof, shall be confined in jail for not less than one day nor more than six months, which jail term shall include actual confinement of not less than twenty-four hours, and shall be fined not less than one hundred dollars nor more than five hundred dollars.
(Emphasis added).

tional prerequisite, they are an evidentiary requirement. First, we note that, pursuant to W.Va.Code § 17C–5A–1(b), where a secondary chemical test has been conducted, the arresting officer is unequivocally required to submit the results of that test with his or her written statement to the Commissioner.[22]

Moreover, W.Va.Code § 17C–5A–1(c) plainly states that "the commissioner *shall determine* ... that the results of *any* secondary test or tests indicate that at the time the test or tests were administered the person had, in his or her blood, an alcohol concentration of ten hundredths of one percent or more, by weight." (Emphasis added). As we noted above, there is no requirement that a secondary test be performed in order to administratively revoke a license. Furthermore, W.Va. § 17C–5A–1(c) provides an alternative basis for revoking a license in the absence of a secondary test. However, the above-quoted language clearly requires that where a test has been administered, the Commissioner must consider the results of that test in making his or her revocation decision.

The necessity of this evidentiary requirement was alluded to in *Dolin v. Roberts.* In that case an arresting officer failed to fulfill his mandatory duty to provide the results of a secondary chemical test. We concluded that a reasonable delay caused by the Commissioner's efforts to correct the error did not violate the revokee's due process rights. *See Dolin v. Roberts,* 173 W.Va. 443, 317 S.E.2d 802 (1984) (holding, in Syllabus point one, "[u]nder West Virginia Code § 17C–5A–1(c) (1983 Supp.), there is no mandatory time limit within which the Commissioner of the Department of Motor Vehicles must enter a license suspension order pursuant to an affidavit from an arresting officer in a drunk driving case"; and concluding that twenty-week delay between arrest and revocation

was reasonable where there was no showing of prejudice to the revokee).

In the case *sub judice*, a secondary chemical test was administered; however, the arresting officer failed to submit the test results as required by W.Va.Code § 17C–5A–1(b). Without the test results, the Commissioner lacked the evidentiary foundation upon which to base her revocation of Coll's license. While she could have attempted to correct the defect by returning the officer's written statement, *see, e.g., Dolin v. Roberts,* she failed to do so in this instance. Thus, she erred in revoking Coll's license. Nevertheless, this error did not require the circuit court's reversal of her decision.

We have previously held that " ' "[a]n error which is not prejudicial to the complaining party is harmless and does not require reversal of the final judgment." Syllabus Point 4, *Burns v. Goff,* 164 W.Va. 301, 262 S.E.2d 772 (1980).' Syl. pt. 2, *Robertson v. Truby,* 170 W.Va. 62, 289 S.E.2d 736 (1982)." Syl. pt. 5, *Miller v. Board of Educ. of County of Boone,* 190 W.Va. 153, 437 S.E.2d 591 (1993). Although the Commissioner erred when she initially revoked Coll's license, he subsequently requested an administrative hearing and the preliminary revocation order was thereby stayed.[23] At the subsequent administrative hearing, the hearing examiner was presented with evidence that, at the time of his arrest, Coll smelled of alcohol, his speech was slurred, his eyes were red and he was unsteady on his feet. In addition, the evidence revealed that Coll was given three structured field sobriety tests by Officer Davies–Williams, and, in the opinion of Officer Davies–Williams, Coll failed all three tests. Finally, the results of the Intoxilyzer 5000 test were admitted into evidence and considered by the hearing examiner. The foregoing facts, which included the necessary

---

**22.** See *supra* note 4 for text of W.Va.Code § 17C–5A–1(b).

**23.** See W.Va.Code § 17C–5A–2(a) (1996) (Repl. Vol.1996), which states in relevant part:

Upon the written request of a person whose license to operate a motor vehicle in this state has been revoked or suspended under the provisions of section one [§ 17C–5A–1] of this article ... the commissioner of motor vehicles

shall stay the imposition of the period of revocation or suspension and afford the person an opportunity to be heard. The written request must be filed with the commissioner in person or by registered or certified mail, return receipt requested, within ten days after receipt of a copy of the order of revocation or suspension.

secondary chemical test results, provided a sufficient evidentiary basis to support revocation of Coll's driver's license.

During the administrative hearing, Coll made no effort to exclude this evidence on the ground that it was not previously considered by the Commissioner.[24] Furthermore, we find no evidence in the record indicating that Coll has ever contended that he was prejudiced by the hearing examiner's consideration of this evidence. Thus, the Commissioner properly acted within her authority to revoke Coll's driver's license upon the recommendation of the hearing examiner following a full and proper administrative hearing. Because the revocation ultimately was proper, the circuit court erred when it reversed the Commissioner's final revocation order. Consequently, we reverse the July 18, 1997, order of the Circuit Court of Harrison County, and reinstate the Final Order of the Commissioner of the West Virginia Division of Motor Vehicles, entered January 15, 1997.

## IV.

## CONCLUSION

For the foregoing reasons, we find that the results of a secondary chemical test to determine the blood alcohol concentration of an individual who has been arrested for driving under the influence of alcohol are not a jurisdictional prerequisite to the Commissioner's authority to revoke a driver's license. We conclude, however, that such a test is an evidentiary requirement incident to revocation. Because the Commissioner failed to consider the secondary test in connection with her preliminary revocation of Coll's license, her decision was in error. However, the error was harmless since the required evidence was properly considered by a hearing examiner in a subsequent administrative proceeding. Consequently, we reverse the July 18, 1997, order of the Circuit Court of Harrison County, and reinstate the January

15, 1997, Final Order of the Commissioner of the West Virginia Division of Motor Vehicles.

Reversed.

---

**24.** By observing that Coll made no effort to exclude evidence from the administrative hearing, we do not intend to imply that the evidence could

properly have been excluded. We need not, and therefore do not, address this particular issue.