JOHN WILLISON JORDAN

*v.*

VIRGINIA L. ROBERTS, *Commissioner,*

*Department of Motor Vehicles*

(No. 14093)

Decided July 11, 1978.

*Morton I. Taber, Michael T. Clifford, Taber & Clifford* for appellant.

*Chauncey H. Browning,* Attorney General, *Richard L. Gottlieb,* Assistant Attorney General, for appellee.

MILLER, JUSTICE:

John Willison Jordan appeals the suspension of his driver's license by the Commissioner of Motor Vehicles, which action was affirmed by the Circuit Court of Kanawha County. The suspension was based on appellant's refusal to submit to a breathalyzer examination pursuant to the provisions of W.Va. Code, 17C-5A-1, *et seq.* The principle contention on appeal is that this statute violates his procedural due process rights as guaranteed by our State and Federal Constitutions. We disagree and affirm the judgment.

Under the provisions of W.Va. Code, 17C-5A-1, commonly known as the implied consent law, a person is deemed to give his consent to a chemical test to determine the content of alcohol in his body by operating a motor vehicle on a public highway in this State. The test may only be administered as an incident to a lawful arrest by a law enforcement officer who has reasonable grounds to believe the driver was driving on a public highway while under the influence of intoxicating liquor.

Three tests are statutorily authorized—blood, urine and breath. The officer selects which test will be performed from those designated by his law enforcement agency. If a blood test is selected and the driver refuses to submit to it, his license cannot be suspended on this basis. However, the officer can designate one of the two other tests and if the driver refuses, the officer is required to explain that the refusal to take such test will result in a suspension of the driver's license for a six-month period. W.Va. Code, 17C-5A-1.

Where there is a refusal to submit to the test finally designated, the officer reports to the Commissioner of Motor Vehicles by a sworn affidavit that (1) he had rea-

sonable grounds to believe the person was driving while under the influence of intoxicating liquor; (2) the person was lawfully placed under arrest for the offense of driving while under the influence of intoxicating liquor; (3) the person refused to submit to the test; and (4) the person was told that his license would be suspended for a period of six months if he refused to submit to the test. The Commissioner, on receipt of the affidavit, is required to enter a suspension order. It is mailed to the person by return receipt, but it is not effective until ten days after receipt. W.Va. Code, 17C-5A-3.

A person whose license has been suspended has the right to a hearing before the Commissioner or his authorized agent or deputy if he files a written request within ten days after receipt of the suspension order. The scope of the hearing covers the four items set out in the arresting officer's affidavit. If the Commissioner confirms the suspension, the driver has the right to appeal the ruling to a Circuit Court and thereafter to this Court. W.Va. Code, 17C-5A-4.

This Court has previously dealt with questions surrounding the admissibility into evidence at a criminal trial of the result of a breathalyzer test. *State v. Dyer*, ____ W.Va. ____, 233 S.E.2d 309 (1977); *State v. Byers*, ____ W.Va. ____, 224 S.E.2d 726 (1976). We have not had occasion to discuss the constitutional aspects of the administrative revocation under the implied consent law.

While Jordan was arrested for driving under the influence, this criminal charge is not before us. The questions presented are whether the statutory license suspension procedures outlined above comport with the procedural due process requirements of our State and Federal Constitutions, and whether there is sufficient evidence in the record to support the suspension.

From a federal standpoint, a driver's license is a sufficiently valuable right to require due process procedures before it can be suspended by a state. *Bell v. Burson*, 402 U.S. 535, 29 L. Ed. 2d 90, 91 S.Ct. 1586 (1971). Under the principles of *Waite v. Civil Service Commission*, ____ W.

Va. ___, 241 S.E.2d 164 (1977), and *North v. Board of Regents,* ___ W.Va. ___, 233 S.E.2d 411 (1977), we characterize a driver's license as a property interest and require the protection of our Due Process Clause before its suspension under the implied consent law.

In *Bell,* the driver's license was suspended under the Georgia Motor Vehicle Safety Responsibility Act, which provided that anyone involved in an automobile accident must furnish security for the resulting damage to third parties.

Certain statutory exceptions relieved those who carried automobile liability insurance and others from the ambit of the security posting requirement. An administrative hearing was provided, and the issues were limited to whether the licensed operator (1) was involved in an accident; (2) complied with the security posting law; or (3) met any of the statutory exceptions.

The critical issue in *Bell* was whether the State was required as a matter of due process to give the licensee an opportunity to demonstrate at the administrative hearing that he was without fault in the accident. The Court noted, "the inquiry into fault or liability requisite to afford the licensee due process need not take the form of a full adjudication of the question of liability," 402 U.S. at 540, but concluded that a sufficient hearing was required to determine if there was a reasonable possibility of a judgment being rendered against him:

> "We hold, then, that under Georgia's present statutory scheme, before the State may deprive petitioner of his driver's license and vehicle registration it must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident." [402 U.S. at 542]

Under procedural due process a hearing must be "appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 94 L. Ed. 865, 70 S.Ct. 652 (1950). From this flows the principle

that the state cannot preclude the right to litigate an issue central to the statutory violation or deprivation.

This principle has been recognized in a number of cases condemning statutes aimed at curtailing or cutting off valuable rights based on a presumption contained within the statute. *See, e.g., Carrington v. Rash,* 380 U.S. 89, 96, 13 L. Ed. 2d 675, 85 S.Ct. 775 (1965) (voter's registration statute denying servicemen the right to vote without regard to residency); *Stanley v. Illinois,* 405 U.S. 645, 653, 31 L. Ed. 2d 551, 92 S.Ct. 1208 (1972) (depriving unwed father the right to contest his fitness for custody of his natural child); *Vlandis v. Kline,* 412 U.S. 441, 451, 37 L. Ed. 2d 63, 93 S.Ct. 2230 (1973) (non-residency presumed for purpose of state college tuition from any legal address outside the state during a one-year period prior to application for admission); *U.S. Department of Agriculture v. Murry,* 413 U.S. 508, 513, 37 L. Ed. 2d 767, 93 S.Ct. 2832 (1973) (qualification for food stamps for dependent children based on a prior year income tax dependency of noneligibile householder).

Implied consent laws have historically been viewed as an effort on the part of the state to decrease the damage to persons and property arising from drivers operating motor vehicles while under the influence of intoxicating liquor.[1] 14 Blashfield *Automobile Law and Practice* § 468.41, p. 126 *et seq.* (3rd ed. 1969); Comment, *Implied Consent-Highway Safety,* 70 W.Va. L. Rev. 408 (1968). Our statute frames one of the essential issues that must be found against the licensee before his suspension can be upheld, that there was reasonable grounds for the arresting officer to believe that the licensee was driving while under the influence of intoxicating liquor. W.Va. Code, 17C-5A-4.

---

[1] There is, as some courts have recognized, a short-range benefit from the implied consent law in that it provides a means of preserving evidence. This, of course, relates to the criminal prosecution for driving under the influence. *Collins v. Secretary of State,* 384 Mich. 656, 187 N.W.2d 423 (1971); *Kesler v. Department of Motor Vehicles,* 81 Cal. Rptr. 348, 459 P.2d 900 (1969).

A showing that the arresting officer had reasonable grounds to believe the licensee was driving while under the influence of intoxicating liquor is comparable to proof by a preponderance of evidence of the fact he was driving under the influence of intoxicating liquor. The general rule, unless altered by statute, is that in an administrative proceeding the required degree of proof is a preponderance of the evidence. 2 Am Jur. 2d *Administrative Law* § 392; *cf., Harper v. State Workmen's Compensation Commissioner*, ___ W.Va. ___, 234 S.E.2d 779 (1977).

Thus, we believe under the *Bell-Mullane* rationale, the State has afforded in the administrative procedure an adequate opportunity under due process concepts for the licensee to contest the key issue of whether there was a reasonable basis to conclude that he was driving under the influence of intoxicating liquor. Moreover, the same is true of the other statutory issues which are a predicate to a suspension; that such person was lawfully placed under arrest, refused to submit to the test finally designated, and was told his license would be suspended for a period of six months.

Having concluded that administrative inquiry does not foreclose hearing on the essential issues on which the statutory deprivation was designed to operate, we consider whether other recognized due process procedures are afforded.

In *North v. Board of Regents, supra,* we indicated the requirements of procedural due process may vary depending on the nature of the case. We stated "the more valuable the right sought to be deprived, the more safeguards will be interposed." 233 S.E.2d at 417. Because of the substantial interests involved in *North*, we held the following due process procedures must be applicable:

"... a formal written notice of charges; sufficient opportunity to prepare to rebut the charges; opportunity to have retained counsel at any hearings on the charges, to confront his ac-

cusers, and to present evidence on his own behalf; an unbiased hearing tribunal; and an adequate record of the proceedings." [___ W.Va. at ___, 233 S.E.2d at 417]

There is not much question that in our mobile society the suspension of a driver's license for a six-month period constitutes a serious deprivation. It may have a direct impact on the licensee's employment if his job is dependent on the use of a driver's license. Certainly the standards set in *North* should be applicable to such suspension.

When we apply *North* standards to the administrative suspension order, we find they are met. The preliminary order of suspension under W.Va. Code, 17C-5A-4, based on the statutory grounds, must be sent to the licensee and constitutes the notice of suspension. Thereafter, the licensee can request a hearing which must be held before the Commissioner or his authorized deputy or agent. The provisions of the Administrative Procedures Act, W.Va. Code, 29A-5-1 *et seq.*, are expressly made applicable to the hearing. Once the hearing procedures are invoked the suspension order is stayed pending the final resolution of the issues. Consequently, there is no prehearing deprivation. W.Va. Code, 17C-5-4.

There is no need to exhaustively detail the procedural rights contained in W.Va. Code, 29A-5-1 *et seq.* Continuances and subpoena rights are recognized, as is the right to examine and cross-examine witnesses and a transcript. Retained counsel can participate and the requirement of an impartially conducted hearing is mandated. W.Va. Code, 29A-5-1(d). In short, the full panoply of rights mandated under *North* are statutorily provided.

We therefore conclude that the administrative proceedings for suspension of a driver's license under W.Va. Code, 17C-5A-1 *et seq.*, do not violate procedural due process standards and were extended in this case.

Appellant, Jordan, points to W.Va. Code, 17C-5-2, which provides criminal penalties for one convicted of driving

while under the influence of intoxicating liquor.[2] He argues that since W.Va. Code, 17C-5A-5, permits evidence obtained through the test required under the implied consent law to be used against him in a criminal trial, he is entitled to have the advice of counsel before deciding whether to consent to such test. Besides claiming the constitutional right to counsel, he also contends that the implied consent law, by forcing him to take the test or otherwise have his license administratively suspended, violates his privilege against self-incrimination.

What appellant overlooks is that the administrative procedures to suspend the driver's license are not triggered until there is a refusal to take the designated test. Our statute, unlike some, precludes forcibly administering the test against the will of the driver. W.Va. Code, 17C-5A-3; *cf., Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S.Ct. 1826 (1966); *see* Annot., 88 A.L.R.2d 1064 (1963).

There is a clear statutory demarcation between the administrative issue on a suspension and the criminal issues on a charge of driving while under the influence. Since the implied consent law permits suspension of a license on a refusal to take the test, the driver may be found not guilty on the criminal charge of driving while under the influence of intoxicating liquor.

This result arises by virtue of the difference in issues and levels of proof required between the administrative and criminal proceeding. In the former, the key issues are the reasonable grounds to believe the licensee was driving while under the influence of intoxicating liquor and whether he refused the test. A preponderance of evidence is sufficient for proof of these issues at the administrative hearing. In the criminal trial, the key issue is whether he was driving while under the influence of intoxicating liquor. Because of the possibility of

---

[2] In 1976 W.Va. Code, 17C-5-2, was extensively amended and the definition of the crime was changed.

fines and imprisonment, proof beyond a reasonable doubt is required.

We decline the invitation to discuss the constitutional ramifications of the implied consent law as it interplays on a criminal proceeding for driving while under the influence of intoxicating liquor. There will no doubt be a further opportunity to explore this issue when an appeal from such criminal conviction is properly before us.

In this case we deal only with the constitutionality of the administrative provisions of the implied consent statute under our Due Process Clause. The statute is obviously designed to achieve one primary goal, which is to enable the State to obtain a scientific test to determine if a motorist is operating his vehicle while under the influence of intoxicating liquor. There is no question that this is a legitimate exercise of the police power of the State. *See Bell v. Burson, supra; Ex Parte Poresky,* 290 U.S. 30, 78 L. Ed. 152, 54 S.Ct. 3 (1933); *Hess v. Pawloski,* 274 U.S. 352, 71 L. Ed. 1091, 47 S.Ct. 632 (1937). In *Dixon v. Love,* 431 U.S. 105, 52 L. Ed. 2d 172, 97 S.Ct. 1723 (1977), the Court emphasized "the important public interest in safety on the roads and highways and in prompt removal of a safety hazard" in sustaining an Illinois statute authorizing revocation of a driver's license for repeated traffic violations. 431 U.S. at 114.

Finally, appellant contends that the evidence introduced at the administrative hearing does not demonstrate that he refused to take the test designated by the arresting officer or that he was told that his refusal would result in a six-month suspension of his license.

The evidence on this point from the arresting officer demonstrates that he designated the breath test and explained that the results, if they showed he was intoxicated, could be used against him, and:

> "I further explained to Mr. Jordan that if he refused the breathalyzer test, that his license would automatically be revoked for six months. I asked him if, if he uh understood this, he said

yes that he did. I then asked Mr. Jordan if he wanted the breath test and he said no that he did not want it, . . ."

As might be expected, appellant's version of the incident differed:

"... he uh finally asked me if uh 'do you want to take a breathalyzer test', but he asked me if I had been drinking, and I said, 'yes, I had a drink' and then he said, asked me did I want to take a breathalyzer test, and I said 'well I don't see no point in it, I said I told you that I had a drink, and you could see that I had' and uh he said 'well it's up to you' and I said 'well, do I have to', and he says 'no that's up to you', and that's all he said about it."

While appellant specifically denied being advised that the refusal to take the test would result in a suspension of his license, and this was directly controverted by the arresting officer, we cannot conclude that the Commissioner was clearly wrong in holding that a preponderance of the evidence favored the officer's testimony.

On the issue of whether there was a refusal to take the test, the general rule appears to be that where the request is made to take the test and the licensee by his conduct or words manifests a reluctance to take the test or qualifies his assent to take the test on factors that are extraneous to the procedures surrounding the test, proof of refusal is sufficiently established. *See, e.g., Cavagnaro v. Motor Vehicles Div., Department of Transportation,* 19 Ore. App. 725, 528 P.2d 1090 (1974); *Coleman v. Commonwealth,* 212 Va. 684, 187 S.E.2d 172 (1972); *Hoban v. Rice,* 25 Ohio St. 2d 111, 267 N.E.2d 311 (1971); *Kesler v. Department of Motor Vehicles,* 81 Cal. Rptr. 348, 459 P.2d 900 (1969); Annot., 88 A.L.R.2d at 1074.

Upon the record presented in this case, we are of the view that there was sufficient evidence to warrant the conclusion that appellant refused the test. His testimony at the hearing suggests a negative view toward taking the test and this, coupled with the arresting officer's

760

testimony, preponderantly demonstrates evidence of refusal.

For the foregoing reasons, the judgment of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*