662 S.E.2d 508

**Jeffrey D. CARPENTER, Petitioner Below, Appellee,**

v.

**Joseph CICCHIRILLO, Commissioner of The West Virginia Division of Motor Vehicles, Respondent Below, Appellant.**

**No. 33654.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 13, 2008.

Decided Feb. 28, 2008.

Concurring Opinion of Justice Albright June 18, 2008.

---

Darrell V. McGraw, Jr., Attorney General, Janet James, Assistant Attorney General, Charleston, WV, for Appellant.

Patrick L. Cottrell, Charleston, WV, for Appellee.

PER CURIAM.

The respondent below and appellant herein, Joseph Cicchirillo, Commissioner of the West Virginia Division of Motor Vehicles (hereinafter "DMV"), appeals from an order entered February 23, 2007, by the Circuit Court of Kanawha County. By that order, the circuit court reversed a DMV order that revoked the driver's license of the petitioner below and appellee herein, Jeffrey Carpenter (hereinafter "Mr. Carpenter"), for driving under the influence of alcohol (hereinafter "DUI"). On appeal to this Court, the DMV argues that the circuit court's reinstatement

of Mr. Carpenter's license was in error. Specifically, the DMV argues that an arresting officer's noncompliance with the forty-eight hour reporting period does not deprive the DMV of its jurisdiction to consider revocation of a driver's license. Based upon the parties' arguments, the record designated for our consideration, and the pertinent authorities, we reverse and remand the decision by the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On May 18, 2003, Patrolman Taylor observed Mr. Carpenter driving in the early morning hours, at 2:47 a.m., without the use of headlights. A traffic stop was initiated. Patrolman Taylor testified at the administrative hearing that Mr. Carpenter did not notice the police lights or siren for a time. Subsequently, when Mr. Carpenter eventually stopped his car, he did so in the center lane of traffic and failed to yield to the right. When he approached the door, Patrolman Taylor noticed an odor of alcohol from the car. In response to questions from the officer, Mr. Carpenter indicated that he had left a bar and had consumed six or seven beers throughout the evening. Upon Mr. Carpenter's exit from the car, Patrolman Taylor detected the odor of alcohol on his person and observed that Mr. Carpenter was unsteady on his feet. Mr. Carpenter submitted to field sobriety tests: the horizontal gaze nystagmus test, the one-leg stand test, and the walk-and-turn test. Mr. Carpenter was then arrested for DUI in violation of W. Va.Code § 17C–5–2 (2001) (Supp.2002).[1] He was transported to the police station for processing and was administered a secondary chemical test.

At the underlying DMV hearing, Patrolman Taylor indicated that he submitted a Statement of Arresting Officer and the Implied Consent Statement to the DMV within forty-eight hours of the arrest in accordance with statutory mandates. For reasons that are unknown in the record, the DMV contacted Patrolman Taylor several weeks later and asked him to resubmit the Statement of Arresting Officer, which he did.[2] To summarize, the arrest occurred on May 18, 2003. The DMV received the Implied Consent Statement on May 20, 2003, and received the Statement of Arresting Officer on June 11, 2003. The DMV, by order of revocation dated June 13, 2003, revoked Mr. Carpenter's driver's license for a period of six months.[3] Mr. Carpenter appealed the revocation, and, after several continuances, an administrative hearing occurred on July 12, 2004, where Mr. Carpenter was represented by counsel. As a result of this hearing, on October 4, 2004, the Commissioner upheld the revocation of Mr. Carpenter's driver's license.[4]

1. See note 6, infra, for the relevant statutory language.

2. The administrative record contains two envelopes by which the Statement of Arresting Officer was mailed to the DMV. One envelope is postmarked May 19, 2003, and the other is postmarked June 10, 2003.

3. Mr. Carpenter was eligible for license reinstatement after ninety days pending completion of a safety and treatment program, along with payment of costs and fees.

4. The results of the secondary chemical test were not admitted due to the failure of the officer to provide a copy of the most recent accuracy inspection test. Thus, the Commissioner of the DMV revoked Mr. Carpenter's license based on evidence illustrating that he drove a motor vehicle, exhibited symptoms of intoxication, and had consumed alcoholic beverages. See Syl. pt. 2, Albrecht v. State, 173 W.Va. 268, 314 S.E.2d 859 (1984) ("Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol."). The Commissioner also found that the results of the secondary chemical test were not needed for administrative revocation of Mr. Carpenter's license. See Syl. pt. 5, Coll v. Cline, 202 W.Va. 599, 505 S.E.2d 662 (1998) ("Under the provisions of W. Va.Code § 17C–5A–1(c) (1994) (Repl. Vol.1996), the results of a secondary chemical test, administered to determine the blood alcohol concentration of a person who has been arrested for driving under the influence of alcohol, are not a jurisdictional prerequisite to the authority of the Commissioner of the West Virginia Division of Motor Vehicles to consider revoking that person ['']s driver's license.").

Mr. Carpenter appealed the order of revocation to the circuit court. The circuit court reversed the order of revocation, finding that

> there are no statutory provisions that authorize the West Virginia Division of Motor Vehicles, or its employees, to assist the arresting officer in the revocation process. Accordingly, the administrative record contains no evidence to refute the Petitioner's contention that the Division of Motor Vehicles failed to be fair and impartial to the Petitioner by, in effect, assisting the arresting officer to submit the proper paperwork to aid in the revocation process. Thus, the Court finds that the Division's actions in this matter violate the Petitioner's due process right to a fair and impartial hearing tribunal. The Court further finds that these actions warrant reversal of the Commissioner's Final Order.

Accordingly, the circuit court reversed the underlying order that revoked Mr. Carpenter's driver's license. The DMV now appeals to this Court asking for reinstatement of the order revoking Mr. Carpenter's driver's license.

## II.

### STANDARD OF REVIEW

■ In this case, the DMV appeals the circuit court's reversal of the DMV's administrative revocation of Mr. Carpenter's driver's license. The standard of review has been previously articulated as follows:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va.Code § 29A–5–4(a) and reviews questions of law presented de novo; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). Moreover, because the circuit court altered the decision by the underlying agency, we are guided by the principle that "[i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law de novo." Syl. pt. 2, *Muscatell, id.* Mindful of these applicable standards, we now consider the substantive issues raised herein.

## III.

### DISCUSSION

■ On appeal, the DMV argues that the circuit court erred and that the order revoking Mr. Carpenter's driver's license should be reinstated. Specifically, the DMV disagrees with the circuit court's decision that Mr. Carpenter's due process rights were violated when the DMV requested the officer to resubmit the Statement of Arresting Officer. In furtherance of this argument, the DMV contends that it is the arresting officer's duty to submit proper documentation. Such failure on the part of the officer does not divest the DMV of its mandate to investigate and revoke a driver's license when it becomes aware of a legal violation. Conversely, Mr. Carpenter argues that the circuit court was correct in finding that the DMV violated his due process rights when it asked the officer to resubmit the Statement of Arresting Officer.[5] Mr. Carpenter contends that the DMV improperly became involved in the process and assisted the officer in submitting his paperwork to aid in the revocation process. Thus, Mr. Carpenter argues that his due process rights to a fair and impartial hearing were violated.

---

**5.** It is noted that Mr. Carpenter's petition to the trial court contained other assignments of error. However, the trial court did not reach those arguments in its opinion, and they have not been reasserted before this Court as an alternative argument by Mr. Carpenter; thus, they are deemed waived. *See Britner v. Medical Sec. Card, Inc.,* 200 W.Va. 352, 354 n. 5, 489 S.E.2d 734, 736 n. 5 (1997) (per curiam) ("The defendants' petition for appeal cited as error the circuit court's application of the five year statute of limitations to this case. However, the defendants did not address that issue in their brief and therefore have abandoned that assignment of error." (citing *State v. LaRock,* 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised ... are not considered on appeal." (internal citation omitted)))).

Mr. Carpenter was arrested for DUI pursuant to W. Va.Code § 17C–5–2.[6] Once a person has been arrested for DUI, there are separate statutory mandates imposed on both the officer and the DMV. In regard to the arresting officer's duties, pursuant to W. Va.Code § 17C–5A–1 (1994) (Repl.Vol.1996),

(b) [a]ny law-enforcement officer arresting a person for an offense described in section two [§ 17C–5–2], article five of this chapter or for an offense described in a municipal ordinance which has the same elements as an offense described in said section two of article five shall report to the commissioner of the division of motor vehicles by written statement within forty-eight hours the name and address of the person so arrested. The report shall include the specific offense with which the person is charged, and, if applicable, a copy of the results of any secondary tests of blood, breath or urine. The signing of the statement required to be signed by this subsection shall constitute an oath or affirmation by the person signing the statement that the statements contained therein are true and that any copy filed is a true copy. The statement shall contain upon its face a warning to the officer signing that to willfully sign a statement containing false information concerning any matter or thing, material or not material, is false swearing and is a misdemeanor.

6. The relevant portion of the code section provides as follows:
(d) Any person who:
(1) Drives a vehicle in this state while he or she:
(A) Is under the influence of alcohol; or
(B) Is under the influence of any controlled substance; or
(C) Is under the influence of any other drug; or
(D) Is under the combined influence of alcohol and any controlled substance or any other drug; or
(E) Has an alcohol concentration in his or her blood of ten hundredths of one percent or more, by weight;
(2) Is guilty of a misdemeanor and, upon conviction thereof, shall be confined in the county or regional jail for not less than one day nor more than six months, which jail term is to include actual confinement of not less than twenty-four hours, and shall be fined not less than one hundred dollars nor more than five hundred dollars.

The distinct duties of the DMV are also found in W. Va.Code 17C–5A–1,[7] as follows:

(c) If, upon examination of the written statement of the officer and the test[ ] results described in subsection (b) of this section, the commissioner shall determine that a person was arrested for an offense described in section two, article five of this chapter or for an offense described in a municipal ordinance which has the same elements as an offense described in said section two of article five, and that the results of any secondary test or tests indicate that at the time the test or tests were administered the person had, in his or her blood, an alcohol concentration of ten hundredths of one percent or more, by weight, or at the time the person was arrested he or she was under the influence of alcohol, controlled substances or drugs, the commissioner shall make and enter an order revoking the person's license to operate a motor vehicle in this state. . . . A copy of the order shall be forwarded to the person by registered or certified mail, return receipt requested, and shall contain the reasons for the revocation or suspension and describe the applicable revocation or suspension periods provided for in section two [§ 17C–5A–2] of this article. No revocation or suspension shall become effective until ten days after receipt of a copy of the order.

W.Va.Code § 17C–5–2 (2001) (Supp.2002). We note that this code section has been amended with minor stylistic changes and to reflect a reduction of the allowable blood alcohol concentration for driving under the influence of alcohol from 0.10 to 0.08 of one percent of body weight. Our citation refers to the statutory language in effect at the time of the offense; however, the current changes do not alter the substance of our analysis.

7. As already recognized in our discussion regarding other code sections, the current statutory language reflects amendments evidencing a reduction in the allowable blood alcohol concentration for driving under the influence of alcohol from 0.10 to 0.08 of one percent of body weight. As is true with the other code sections discussed herein, our citation refers to the statutory language in effect at the time of the offense; however, the current changes do not alter the substance of our analysis.

Thus, while the arresting officer has a duty to report the arrest to the DMV within forty-eight hours of the arrest, the DMV has the duty to revoke a person's privilege to drive a car if evidence of a violation has occurred. In this case, the DMV did not have the required Statement of Arresting Officer, and asked the officer to resubmit his statement to go along with the already-received Implied Consent Statement. The DMV waited until after receipt of the proper Statement of Arresting Officer, which occurred within three weeks of the arrest, before revoking Mr. Carpenter's driver's license.

■ The issue in this case regarding the interplay of the officer's mandates and the DMV's proceedings has been directly decided by this Court. We previously have held that

[a] law enforcement officer's failure to strictly comply with the DUI arrest reporting time requirements of *W. Va.Code*, 17C–5A–1(b) [1994] is not a bar or impediment to the commissioner of the Division of Motor Vehicles taking administrative action based on the arrest report, unless there is actual prejudice to the driver as a result of such failure.

Syl. pt. 1, *In re Burks*, 206 W.Va. 429, 525 S.E.2d 310 (1999). The *Burks* case decided the same issue that we currently have before us, with the exception that in the present case, the DMV acted on its own behalf to ask the officer to resubmit a Statement of Arresting Officer. In *Burks*, the arresting officer failed to mail the Statement of Arresting Officer within the forty-eight hour time limit imposed by the statute, but he did submit it at a later time without prompting by the DMV. This Court decided that "the 48–hour reporting duty in *W. Va.Code*, 17C–5A–1(b) [1994] is directed to and imposed on the arresting officer, and not on the DMV." *Burks*, 206 W.Va. at 432, 525 S.E.2d at 313.

While this pronouncement is clear that an officer's failure at his or her duty to comply with the statutory mandates does not deprive the DMV of fulfilling its own obligations, we also find further support in other cases decided by this Court. For example, in *Dolin v. Roberts*, 173 W.Va. 443, 317 S.E.2d 802 (1984), the arresting officer submitted his Statement of Arresting Officer to the Commissioner within the required time frame, but failed to fulfill his mandatory duty to provide the results of a secondary chemical test.[8] After the DMV returned the statement, the officer resubmitted it with the test results attached. Granting a writ of prohibition, the Circuit Court of Boone County found the twenty-week delay between Dolin's arrest and the subsequent suspension of his driving privileges violated his procedural due process rights. On appeal, this Court concluded that the time requirements for filing the arresting officer's statement applied only to the officer, and had no application to the Commissioner. Further, we concluded that a delay of twenty weeks between the arrest and the revocation was reasonable because there was no showing of prejudice.

Similarly, in the subsequent case of *Coll v. Cline*, 202 W.Va. 599, 505 S.E.2d 662 (1998), the arresting officer failed to attach the breathalyzer results when he submitted his Statement of Arresting Officer to the DMV. Based on this preliminary report, the DMV revoked the petitioner's license to drive. The circuit court reversed the revocation, finding that the DMV's revocation order was unlawful and outside its jurisdiction because the breathalyzer results were not attached to the Statement of Arresting Officer. On appeal, this Court determined that the DMV had the authority and jurisdiction to consider the license revocation and found that the actual revocation was error, but that it was harmless error. This Court reasoned that while a secondary chemical test is not required, once it has been performed, the officer is required to forward it to the DMV.[9]

---

**8.** While a secondary chemical test is not required to administratively revoke a person's driving privileges, once one has been performed, the officer is required to forward the results to the DMV. *See Coll v. Cline*, 202 W.Va. 599, 609–10, 505 S.E.2d 662, 672–73 (1998) ("Although the results of the secondary chemical test are not a jurisdictional prerequisite, they are an evidentia-

ry requirement. First, we note that, pursuant to W. Va.Code § 17C–5A–1(b), where a secondary chemical test has been conducted, the arresting officer is unequivocally required to submit the results of that test with his or her written statement to the Commissioner.").

**9.** *See* note 8, *supra*.

More important to the analysis in this case, however, was the acknowledgment of this Court that the DMV Commissioner has the ability to cure a defect in paperwork. *See Coll v. Cline*, 202 W.Va. at 610, 505 S.E.2d at 673 ("In the case *sub judice*, a secondary chemical test was administered; however, the arresting officer failed to submit the test results as required by W. Va.Code § 17C–5A–1(b). Without the test results, the Commissioner lacked the evidentiary foundation upon which to base her revocation of Coll's license. While she could have attempted to correct the defect by returning the officer's written statement, *see, e.g., Dolin v. Roberts*, she failed to do so in this instance."). This Court went on to conclude, however, that the error did not require the circuit court's reversal of the DMV revocation because the error was harmless and not prejudicial.

Based on the foregoing, the *Burks* Court went on to apply *Coll* and *Dolin* in finding "that technical and nonprejudicial noncompliance with reporting time requirements that are imposed on a law enforcement officer [is] not a jurisdictional impediment to the DMV taking action regarding a license suspension." *In re Burks*, 206 W.Va. at 432, 525 S.E.2d at 313 (internal footnote omitted). Thus, by application to our present case, the minor delay in the receipt of the Statement of Arresting Officer did not divest the DMV of its duty to investigate and consider license revocation once it received the requested paperwork. *See* Syl. pt. 1, *Dolin*, 173 W.Va. 443, 317 S.E.2d 802 ("Under West Virginia Code § 17C–5A–1(c) (1983 Supp.), there is no mandatory time limit within which the Commissioner of the Department of Motor Vehicles must enter a license suspension order pursuant to an affidavit from an arresting officer in a drunk driving case.").

Returning to the controlling language in *Burks*, we only need to determine if the failure of the officer to submit the Statement of Arresting Officer to the DMV within forty-eight hours resulted in "actual prejudice to the driver as a result of such failure." Recognizing that "[a] driver's license is a property interest which requires the protection of this State's Due Process Clause before its suspension can be obtained under the implied consent law. W. Va.Code, 17C–5a–1, *et seq.*", Syl. pt. 1, *Jordan v. Roberts*, 161 W.Va. 750, 246 S.E.2d 259 (1978), the *Jordan* Court relied on the test for actual prejudice found in *North v. Board of Regents*, 160 W.Va. 248, 257, 233 S.E.2d 411, 417 (1977), as follows:

> [t]he standard of due process ... require[s] the following rights: a formal written notice of charges; sufficient opportunity to prepare to rebut the charges; opportunity to have retained counsel at any hearings on the charges, to confront his accusers, and to present evidence on his own behalf; an unbiased hearing tribunal; and an adequate record of the proceedings.

In the present case, Mr. Carpenter was provided ample notice of the charges and was afforded sufficient opportunity to rebut the charges when he exercised his right to a hearing with counsel present. Additionally, his counsel proceeded to cross-examine the arresting officer and present evidence on his behalf, in front of an unbiased hearing examiner where a record was made of the proceedings. Thus, Mr. Carpenter was not subjected to actual prejudice when the DMV received the Statement of Arresting Officer three weeks after the arrest and started the revocation process, which resulted in a suspension of Mr. Carpenter's privilege to drive.

## IV.

## CONCLUSION

For the foregoing reasons, the circuit court's reversal of the DMV's revocation of Mr. Carpenter's license was in error and is, therefore, reversed. Accordingly, this case is remanded for the circuit court to reinstate the DMV's order revoking Mr. Carpenter's license to drive.

Reversed and Remanded.

Justice ALBRIGHT concurs and reserves the right to file a concurring opinion.

ALBRIGHT, Justice, concurring:

(Filed June 18, 2008)

I concur with the result of the majority opinion and write separately only to illumine the unfortunate degree of inconsistency pres-

ent in this Court's determinations regarding the impact of technical violations of rules and statutes. In the present case, this Court was correct in finding that the arresting officer's violation of the reporting period did not deprive the DMV of its jurisdiction to consider revocation of Mr. Carpenter's driver's license. Certainly, important public interests are at stake in this matter, and an officer's failure in reporting should not alter the responsibility of the DMV to proceed with license revocation.

As I recently lamented in my dissent to *Guido v. Guido*, 222 W.Va. 528, 667 S.E.2d 867 (2008), however, this Court does not always apply the guiding precepts in a uniform manner. *See Guido*, 222 W.Va. at 532, 667 S.E.2d at 871 (Albright, J., dissenting). As in this case, a technical violation of a statutory guideline was presented in *Guido*. Yet, in *Guido*, a majority of this Court erroneously found that the pro se litigant's technical violation deprived the court of jurisdiction to hear his appeal.

I find it disquieting that this Court, for good reasons, is willing to excuse a technical violation by a public agency, freeing it to proceed against the interest of a citizen, but cannot find good cause to excuse a similar technical violation by a citizen. Looking at the two cases, it seems to me that we have developed a double standard, picking and choosing who is to be thrown out of court.