<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1511**

THEODORE TSORAS,

Plaintiff - Appellant,

v.

JOSEPH MANCHIN, III, Governor; JOHN C. MUSGRAVE, West
Virginia Lottery Commission Director; MICHAEL A. ADAMS, West
Virginia Lottery Commission Member; KENNETH L. GREEAR, West
Virginia Lottery Commission Member; BILL CLAYTON, West
Virginia Lottery Commission Member; DAVID MCCORMICK, West
Virginia Lottery Commission Member; DON LUCCI, West Virginia
Lottery Commission Member,

Defendants - Appellees.

Appeal from the United States District Court for the Northern
District of West Virginia, at Wheeling. Frederick P. Stamp,
Jr., Senior District Judge. (5:08-cv-00121-FPS)

Argued: March 23, 2011          Decided: May 25, 2011

Before WILKINSON, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Theodore Levette Tsoras, ROBINSON LAW OFFICES, Wheeling,
West Virginia, for Appellant. David Lee Wyant, BAILEY & WYANT,
PLLC, Wheeling, West Virginia, for Appellees. **ON BRIEF:** April
J. Wheeler, BAILEY & WYANT, PLLC, Wheeling, West Virginia, for
Appellees.

Unpublished opinions are not binding precedent in this circuit.

———————————

PER CURIAM:

The West Virginia Lottery Commission rejected Theodore Tsoras's gambling license application because he had been convicted of gambling-related offenses. Tsoras then challenged that denial in a § 1983 action. The district court dismissed the suit. For the reasons that follow, we affirm.

## I.

Theodore Tsoras applied for a West Virginia Lottery Racetrack Table Games Act license. On November 13, 2007, the West Virginia Lottery Director denied Tsoras's application because he was statutorily ineligible for a license. West Virginia Code § 29-22C-15(a)(3) states that the "[t]he commission may not grant any license" to someone who "[h]as been convicted of a . . . gambling-related offense." Tsoras had been convicted of multiple gambling-related offenses, including aiding and abetting an illegal gambling business, aiding and abetting interstate transportation in gambling in racketeering enterprises, and aiding and abetting in transmission of wagering information.

Tsoras appealed the denial and received an administrative hearing. At this hearing, Tsoras argued that the "may not" language in West Virginia Code § 29-22C-15(a)(3) indicated discretion and that he was fit to obtain a license despite his

3

prior convictions. He also advanced due process and equal protection arguments. The hearing examiner recommended that the West Virginia Lottery Commission affirm the denial. The Commission held a hearing on the matter and affirmed the denial on April 25, 2008.

At that point, Tsoras had the option of appealing the Commission's decision through the state court system. See W. Va. Code § 29-22C-17. But he instead chose to file this § 1983 action in federal court. The district court granted the defendants' motion to dismiss, but it declined to reach the merits of the state licensing dispute. Rather, the court reasoned that the Commission's decision had preclusive effect on Tsoras's claims and that Tsoras was improperly attempting to appeal from the state court system to federal court. Tsoras appealed to this court.

II.

The district court did not abuse its discretion in declining to inject itself into the middle of a state licensing proceeding. The district court rested its holding principally on preclusion grounds, but we may affirm on any ground supported by the record. See Pitt County v. Hotels.com, L.P., 553 F.3d 308, 311 (4th Cir. 2009).

4

A.

As an initial matter, West Virginia offers a fair adjudicatory scheme for resolving gambling licensing disputes. This system comports with the requirements of due process. Tsoras benefited from these impartial procedures during his licensing adjudication.

Tsoras's administrative hearing before the hearing examiner had many of the same procedural protections as judicial proceedings. Those who appear before the hearing examiner may have an attorney represent them. See W. Va. Code R. § 179-2-6. They may submit briefing and present oral argument to the hearing examiner. See W. Va. Code R. § 179-2-8. There is an opportunity to engage in discovery before the hearing. See W. Va. Code R. § 179-2-4. The hearing itself has evidentiary rules that permit only reliable evidence. See W. Va. Code R. § 179-2-8. And at the hearing, parties are permitted to call witnesses, present evidence, and propose conclusions of law and findings of fact. See id.

Tsoras made full use of these procedural protections. He was represented by counsel. He fully presented both his state law and constitutional claims through briefing and oral argument. At the hearing, Tsoras testified on his own behalf and entered eleven documents into evidence. And he later submitted proposed findings of fact and conclusions of law.

5

Although Tsoras did not prevail, it cannot be said that his hearing was anything less than fair.

Beyond the procedural protections at the administrative hearing, the fact that there are multiple layers of review of the initial licensing denial is in itself indicative of the soundness of the administrative scheme. After the Director denied Tsoras a gambling license, that decision went through two layers of review, one before the hearing examiner and one before the full Commission. Tsoras availed himself of these opportunities to present the arguments and evidence supporting his position.

When Tsoras did not prevail at either juncture in the administrative process, he had yet an additional opportunity to appeal, this time to the West Virginia court system. See W. Va. Code §§ 29-22C-17; 29A-5-4. West Virginia Code § 29-22C-17 states: "Any person aggrieved by a final order or decision of the commission in a contested case may file a petition for appeal in the Circuit Court of Kanawha County within thirty days after the person received notice of the final order or decision, as provided in section four, article five, chapter twenty-nine-a of this code." This appeal to the state court system affords de novo review of questions of law, which would certainly include Tsoras's constitutional arguments. See Carpenter v. Cicchirillo, 662 S.E.2d 508, 511 (W. Va. 2008). This option for

6

state court review offered Tsoras a third opportunity to make his case.

Although the way was open for Tsoras to appeal through the West Virginia court system, he did not avail himself of this opportunity. Instead, he sought to bypass the state appeal and, in effect, appeal the state agency's decision to a federal district court. Such a course fractured West Virginia's interests in maintaining the integrity of its gambling licensing scheme and preventing the piecemeal litigation of denials of licensing applications.

Gambling regulation is an area where states have much expertise and competence, and it lies at the core of a state's police power. The Supreme Court has long recognized a state's special interests in regulating gambling: "The police power of the state extends to . . . the prohibition of lotteries, gambling, [and] horse-racing . . . ." Crutcher v. Commonwealth, 141 U.S. 47, 61 (1891); see also Ah Sin v. Wittman, 198 U.S. 500, 505-06 (1905) ("The suppression of gambling is concededly within the police powers of a state . . . ."). Indeed, "the police power embraces regulations . . . in the interest of the public health, morals, or safety." Chicago & Alton Railroad Co. v. Tranbarger, 238 U.S. 67, 77 (1915). And the regulation of gambling is aimed at these exact concerns. See United States v.

7

Edge Broadcasting Co., 509 U.S. 418, 426 (1993); Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico, 478 U.S. 328, 341 (1986).

This court has echoed these sentiments: "The regulation of gambling enterprises lies at the heart of the state's police power. Formulations of that power underscore the state's paramount interest in the health, welfare, safety, and morals of its citizens. The regulation of lotteries, betting, poker, and other games of chance touch all of the above aspects of the quality of life of state citizens." Johnson v. Collins Entertainment Co., Inc., 199 F.3d 710, 720 (4th Cir. 1999) (internal citations omitted); see also Casino Ventures v. Stewart, 183 F.3d 307, 310 (4th Cir. 1999) ("Because [gambling] restrictions are aimed at promoting the welfare, safety, and morals of South Carolinians, they represent a well-recognized exercise of state police power.").

Tsoras's insistence on a federal forum here ignores the fact that there are some cases in which federal courts "must decline to interfere with the proceedings or orders of state administrative agencies." New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989). Specifically, federal courts must try to avoid the "[d]elay, misunderstanding of local law, and needless federal conflict with the State policy, [that] are the inevitable product of [a] double system

8

of review." Burford v. Sun Oil Co., 319 U.S. 315, 327 (1943). Tsoras seeks to fracture West Virginia's gambling licensing scheme, producing just such a double system of review, one that would "disrupt[] . . . state efforts to establish a coherent policy . . . and threaten[] the creation of a patchwork of inconsistent enforcement efforts." Johnson, 199 F.3d at 723. Not only would such a result create needless confusion, it would also cast aside the principles of federalism and comity that the Supreme Court has admonished us to consider in precisely this context. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728 (1996).

West Virginia provided Tsoras with a more than adequate forum for his gambling license dispute, and he has given us no reason to doubt the fairness or competence of the West Virginia court system in this area. In these circumstances, we can hardly fault the district court for declining to review the merits of the case.


III.

As an alternate ground of affirmance, we hold that Tsoras's constitutional claims are without merit. See Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993). Tsoras first argues that West Virginia Code § 29-22C-15(a) violates the Due Process Clause by automatically denying him a license solely on the basis of his

9

previous gambling convictions even though he might otherwise be qualified. He next argues that §§ 29-22C-15 and 29-22C-16 violate the Equal Protection Clause in two ways. The statutes grant licenses to other similarly situated applicants who have not been convicted of gambling-related crimes, and they give discretion regarding the revocation of licenses already issued to people who then commit a gambling-related offense.

These arguments are insubstantial. Those who have been convicted of gambling-related offenses are not a suspect class, and no fundamental right is at issue here. Accordingly, Tsoras must prove that West Virginia had no rational basis for singling out gambling offenders during the initial licensing process. See In re Premier Automotive Services, Inc., 492 F.3d 274, 283 (4th Cir. 2007); Hawkins v. Freeman, 195 F.3d 732, 739 (4th Cir. 1999) (en banc). He cannot meet this burden.

It is entirely rational for West Virginia to deny gambling licenses to gambling offenders. The state had every right to exercise its police power to prohibit those who had demonstrated a disregard for its gambling laws from receiving a privilege under those laws and gaining access to more opportunities for misconduct. It is also within the state's power to make revocation as a result of a gambling conviction discretionary for those who had already received a license, even though it is an absolute bar for those applying for a license. Licensees

10

have a track record that new applicants do not.  And for licensees with a long history of compliance, revocation may not be the appropriate punishment.  In sum, West Virginia's policy of denying gambling licenses to those who have run afoul of the gambling laws comports with constitutional requirements and affords an additional basis on which to affirm the district court.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

11