# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Patricia S. Reed, Commissioner of the
West Virginia Division of Motor Vehicles,
Respondent Below, Petitioner**

**vs)  No. 15-0313** (Monongalia County 12-AA-1)

**Charles Lee Hussing,
Petitioner Below, Respondent**

**FILED**

**June 17, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Patricia S. Reed, Commissioner of the West Virginia Department of Motor Vehicles, ("DMV"), by counsel Janet E. James, appeals the March 9, 2015, order of the Circuit Court of Monongalia County that reversed the November 13, 2012, order of the Office of Administrative Hearings ("OAH"). The OAH's November 13, 2012, order affirmed the DMV's revocation of Respondent Charles Lee Hussing's driver's license for driving under the influence of alcohol, controlled substances, or drugs ("DUI"). Respondent, by counsel S. Sean Murphy, filed a response in support of the circuit court's order. In this appeal, the DMV contends that the circuit court erred in finding that there was no reasonable suspicion for the stop of respondent's vehicle; that respondent was not given a copy of the implied consent statement; and that respondent did not refuse to submit to the designated secondary chemical test.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law, and finds that the circuit court was clearly wrong in its decision. For these reasons, a memorandum decision reversing the circuit court's order is appropriate under Rule 21(d) of the Rules of Appellate Procedure.

On July 14, 2011, a commercial vehicle operated by respondent was stopped by Patrolman Kenneth Murphy ("Officer Murphy") of the Morgantown Police Department.[1] Officer Murphy stopped the vehicle after he observed it straddle the center line, drive on the center line, and nearly strike another vehicle. At the vehicle stop, Officer Murphy observed that respondent's gait was unsteady (when exiting the vehicle and while standing); that respondent's eyes were bloodshot, red, and glassy; and that respondent's speech was slurred. Officer Murphy administered a series of field sobriety tests to respondent, including the horizontal gaze nystagmus ("HGN") test, the walk and turn test, and the one leg stand test. Respondent failed the one leg stand and HGN tests, was placed under arrest, and transported to the police station.

---

[1]At all times relevant hereto, respondent was licensed and qualified to operate Class "B" commercial motor vehicles in the State of West Virginia.

1

While at the police station, Officer Murphy read respondent the implied consent statement,[2] provided him with a copy of the same, and asked respondent if he would agree to submit to a secondary chemical test of the breath. Respondent answered that he was unsure whether he wanted to submit to the secondary chemical test. Fifteen minutes later, the officer again asked respondent to submit to a secondary chemical test of the breath, to which respondent stated that he was still not sure whether he wanted to take the test. Officer Murphy then began the process to ready the Intoximeter (the machine by which he would conduct the secondary chemical test of respondent's breath). When the time came for respondent to provide a breath sample, he refused. Officer Murphy then obtained a warrant for a sample of respondent's blood, and respondent was transported to Ruby Memorial Hospital where his blood was drawn.

Respondent's privilege to drive was revoked and the disqualification of his commercial driving privilege was completed by the DMV's Order of Revocation dated August 12, 2011. An administrative hearing was held on January 19, 2012, before the OAH. At the administrative hearing, petitioner's records were admitted into evidence, and Officer Murphy testified. Respondent did not testify. By decision dated November 13, 2012, the OAH affirmed the revocation of respondent's driver's license (including his commercial driving privileges) for DUI and his refusal to submit to the secondary chemical test.

Respondent appealed the OAH's decision to the circuit court. A hearing was held on respondent's appeal and, on March 9, 2015, the circuit court entered its order granting respondent's petition for appeal and reversing the OAH's November 13, 2012, order. In its order, the circuit court found there was no reasonable suspicion for the stop of respondent's vehicle. Further, the circuit court found that Officer Murphy did not provide respondent with the implied consent statement, such that respondent could not be said to have refused the secondary chemical testing of his breath. It is from the March 9, 2015, order that petitioner now appeals.

This Court has previously established the standards for our review of a circuit court's order deciding an administrative appeal:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). Syllabus point two of *Muscatell* provides: "In cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." With these standards in mind, we consider the parties' arguments.

---

[2]The implied consent statement is a written document containing the penalties for refusing to submit to a designated secondary chemical test.

2

In its petition for appeal, petitioner asserts two assignments of error. First, it alleges that the circuit court erred in finding that there was no reasonable suspicion for the stop of respondent's vehicle. Second, it contends that the circuit court erred in finding that respondent was not given a copy of the implied consent statement and that he did not refuse the designated secondary chemical test.

As to petitioner's first assignment of error, this Court has long held that "[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." Syl. Pt. 1, in part, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994). "When evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." *Id.* at 430, 452 S.E.2d 888. In *Navarette v. California*, 134 S.Ct. 1683 (2014), the United States Supreme Court stated that whether a police officer had an articulable reasonable suspicion to conduct an investigatory stop depends on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 1690 (internal quotation and citation omitted). *See Dale v. Ciccone*, 233 W.Va. 652, 760 S.E.2d 466 (2014).

In the instant case, the circuit court determined that "[w]ithout some elaboration on the officer's testimony that [respondent] was driving erratically or that he was legally stopped, it is difficult to ascertain how [Officer Murphy] inferred that [respondent] was in violation of the law." We disagree. We have previously recognized that "credibility determinations by the finder of fact in an administrative proceeding are 'binding unless patently without basis in the record.'" *Webb v. W.Va. Bd. of Med.*, 212 W.Va. 149, 156, 569 S.E.2d 225, 232 (2002). When applying this standard to the record herein, we have no reason to second guess the credibility determinations made by the OAH regarding the testimony of Officer Murphy. Officer Murphy testified before the OAH that "[w]hile following [respondent's] vehicle, I observed it go left of center, drive on the center lane, and . . . [w]hile going around this right-hand turn, [respondent] went on the opposite side, the oncoming traffic side, almost striking a vehicle."[3] As such, we find that the circuit court abused its discretion in finding that there was no reasonable suspicion for the stop of respondent's vehicle.

In its second assignment of error, petitioner contends that the circuit court erred in finding that respondent was not given a copy of the implied consent statement and, thus, he could not be determined to have refused the secondary chemical test of the breath. As we noted in *Jordan v. Roberts*, 161 W.Va. 750, 246 S.E.2d 259 (1978),

---

[3]Respondent's erratic driving, as described by Officer Murphy during his OAH testimony, is a misdemeanor pursuant to West Virginia Code § 17C-8-2, which provides, in pertinent part, that "(a) . . . a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway."

3

[u]nder the provisions of W.Va. Code § 17C-5A-1, commonly known as the implied consent law, a person is deemed to give his consent to a chemical test to determine the content of alcohol in his body by operating a motor vehicle on a public highway in this State. The test may only be administered as an incident to a lawful arrest by a law enforcement officer who has reasonable grounds to believe the driver was driving on a public highway while under the influence of intoxicating liquor.

161 W.Va. at 751, 246 S.E.2d at 260.

In *Jordan*, we further held that

[w]here the request is made to take the ultimately designated test under the implied consent law and the licensee by his conduct or words manifests a reluctance to take the test or qualifies his assent to take the test on factors that are extraneous to the procedures surrounding the test, proof of refusal is sufficiently established.

161 W.Va. at 751, 246 S.E.2d at 260.

Respondent argues that the record is devoid of any documentation to support Officer Murphy's testimony that he advised respondent that refusal to take the secondary chemical test would result in a suspension of his license. We disagree. To the contrary, our review of the record reveals that there is sufficient evidence to establish respondent's failure to submit to a secondary chemical test of the breath. Through his own testimony before the OAH, Officer Murphy advised that he read respondent the implied consent statement and provided respondent with a copy of the same. Further, the record reflects that respondent ultimately refused to submit to the designated testing. Accordingly, we find that the circuit court abused its discretion in finding otherwise. We thus agree with the OAH that there is sufficient evidence to warrant the conclusion that respondent refused to submit to a secondary chemical test of the breath.

For the foregoing reasons, we reverse the circuit court's March 9, 2015, order.

Reversed.

**ISSUED:** June 17, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

4