IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

FILED

**April 26, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0973

WEST VIRGINIA OFFICE OF MINERS'
HEALTH, SAFETY AND TRAINING,
Petitioner

v.

BOBBY BEAVERS,
Respondent.

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Tod J. Kaufman
Case No. 20-AA-62

REVERSED AND REMANDED

_____

Submitted: April 5, 2022
Filed: April 26, 2022

John H. Boothroyd, Esq.
Assistant Attorney General
Michael R. Williams, Esq.
Senior Deputy Solicitor General
Charleston, West Virginia
Counsel for Petitioner


Christopher D. Pence, Esq.
Hardy Pence, PLLC
Charleston, West Virginia
Counsel for Amicus Curiae
Metallurgical Coal Producers Association

Lonnie C. Simmons, Esq.
Dipiero Simmons McGinley &
Bastress, PLLC
Charleston, West Virginia
Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

CHIEF JUSTICE HUTCHISON dissents and reserves the right to file a separate opinion.

JUSTICE MOATS dissents and reserves the right to file a separate opinion.

JUSTICE ALAN D. MOATS sitting by temporary assignment.

SYLLABUS BY THE COURT

1.      "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

2.      "'Administrative agencies and their executive officers are creatures of statute and delegates of the Legislature.  Their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. They have no general or common-law powers but only such as have been conferred upon them by law expressly or by implication.' Syl. Pt. 3, *Mountaineer Disposal Service, Inc. v. Dyer*, 156 W. Va. 766, 197 S.E.2d 111 (1973).  Syllabus Point 3, *Appalachian Regional Health Care, Inc. v. W. Va. HRC*, 180 W. Va. 303, 376 S.E.2d 317 (1988)."  Syl. Pt. 1, *Francis O. Day v. Board of Review*, 188 W. Va. 418, 424 S.E.2d 763 (1992).

3.      "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."  Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

4.     The Coal Mine Safety Board of Appeals does not have the authority to treat the consumption of a CBD product as a legal defense to a positive test for cannabinoids/THC when neither West Virginia Code § 22A-1A-1 *et seq.* nor West Virginia Code of State Rules § 56-19-1 *et seq.* provide for such a defense to an otherwise positive test.

ARMSTEAD, J.:

This is an appeal from the Circuit Court of Kanawha County's November 10, 2020, Final Order affirming a Decision of the Coal Mine Safety Board of Appeals (hereinafter "Board") reinstating Respondent's mining certifications following a random substance abuse drug and alcohol test in which he tested positive for marijuana metabolites ("THC") – specifically Carboxy-THC ("THCA"). Respondent argues that his positive drug test resulted from his use of cannabidiol ("CBD") oil on the day prior to the test. The West Virginia Office of Miners' Health, Safety and Training (hereinafter "OMHST") argues that CBD use is not a defense to Respondent's positive test. Both the Board and the circuit court were persuaded by Respondent's argument that he used CBD oil and that Respondent's test did not differentiate between CBD and THC.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we conclude that the circuit court erred in affirming the Board's decision reinstating Respondent's mining certifications following his positive drug test. We therefore reverse the circuit court's Final Order entered on November 10, 2020, and remand this action to the circuit court with direction to reinstate the suspension of the Respondent's mining certifications as imposed by the OMHST.

## I. FACTS AND PROCEDURAL HISTORY

1

In February 2020, Respondent was working in the West Virginia coal mining industry.[1] On February 11, 2020, Respondent underwent a random substance abuse drug and alcohol test. He provided a urine sample, which was sent to Medtox Laboratories (hereinafter "Medtox") for testing. Respondent's urine sample tested positive for cannabinoids/THC. Specifically, the laboratory confirmation test showed the presence of THCA above the 15 nanogram cutoff level. As a result of this positive test and as required by West Virginia Code § 22A-1A-1(d), OMHST suspended Respondent's mining certifications.[2] By letter dated February 19, 2020, OMHST informed Respondent that his certifications were being temporarily suspended and of his right to appeal his suspension. This letter also provided "Contested Case Hearing Instructions," which informed Respondent, *inter alia*, of the following:

> 5. You have the right to retain a lawyer to represent you in the contested case hearing or you can represent yourself. If you retain a lawyer you must do so at your own expense.
>
> …
>
> 8. Any person requesting a hearing who intends to challenge the sample collection methods, the laboratory test results, or the medical review officer's

---

[1] Respondent was working for Onyx Energy LLC.

[2] The following certifications issued to Respondent were temporarily suspended:

Surface Apprentice Miner Certification
Surface Coal Miner Certification

2

verification of the laboratory test result or the chemical test of breath, shall notify the Director of his or her intent. The person shall submit the notification in writing, either in person or by mail to the Director, at least fourteen (14) days prior to the hearing date. The notification shall specify, in detail, the challenge the person intends to make. The notification can be included in your request for hearing. When you make the notification be sure to include a telephone number where you can be reached.

9.      If the person requesting the hearing submits notification in writing to the Director that he/she intends to challenge the laboratory test results or the medical review officer's verification of the laboratory test result, that person shall have the split sample tested, at his/her expense, at a SAMSHA certified laboratory and those results verified by a medical review officer. The split sample results and the results of the split sample verification by a medical review officer shall be provided to the Director and the original medical review officer. No other form of evidence shall be admissible to challenge the laboratory test result of the medical review officer's verification of the laboratory test result.

By letter dated February 26, 2020, Respondent appealed his suspension and requested a hearing date before the Board. On April 16, 2020, the Board held a hearing on Respondent's appeal. Respondent participated by telephone and proceeded without a lawyer.[3] At that time, Respondent alleged that CBD use resulted in his positive test result.

---

[3] At the beginning of the hearing, the Chair of the Board specifically addressed Respondent's decision to proceed without an attorney.

        Chair:      And you are here today without a lawyer; is that correct?

        Mr. Beavers: Yes.

(continued . . .)

Specifically, Respondent alleged that his positive test result occurred because he was misled by a pharmacist. In addition, Respondent indicated that he had documentary evidence ("letters from doctors" and "letters from the pharmacist" who sold him the CBD oil) that he wanted the Board to consider. The hearing was continued to April 23, 2020, to provide Respondent with time to submit the documents he referenced during the April 16, 2020 hearing.

During the hearing on April 23, 2020, Respondent appeared by telephone and again proceeded without a lawyer.[4] Respondent stipulated to the following: (1) he

---

> Chair: And understanding that you are entitled to have a lawyer and that probably the Board would grant you a continuance if it were to give time to get a lawyer if you asked for it, do you wish to go forward here today without a lawyer?
>
> Mr. Beavers: Yes. I would like to proceed, yes.

[4] At the beginning of the hearing on April 23, 2020, the Chair of the Board addressed Respondent's decision to proceed without an attorney.

> Chair: As I understand the situation, Mr. Beavers, your – you do not contest – let me back up a second. Do you remember what I told you about the right to have a lawyer?
>
> Mr. Beavers: Yes, sir. Yes, sir.
> Chair: You are here today without a lawyer; is that correct?
>
> Mr. Beavers: Yes, sir.

(continued . . .)

was working in a certified position at the time of the random drug test on February 11, 2020; (2) he was properly selected to undergo a random drug test; and (3) the collection procedures were proper. For these reasons, OMHST did not call witnesses regarding these issues.[5] OMHST called one witness – Dana Carasig, M.D., a medical review officer employed by Doctors Review Service. Dr. Carasig testified that she received and reviewed a positive lab result for Respondent along with a custody and control form, which showed the chain of custody to be intact. Dr. Carasig spoke with Respondent and informed him of the positive result. Because Respondent did not have a valid medical explanation for the positive result, it was released as a positive test.[6] According to Dr. Carasig's notes, Respondent mentioned that he had quit taking CBD. However, with respect to claims regarding the use of CBD, Dr. Carasig's testimony is as follows:

> Mr. Boothroyd: Okay. And so if he had told you that he thought the test was positive because he had taken CBD oil and

> Chair: And understanding that we would probably grant you another continuance to get a lawyer if you wanted to do that, do you wish to go forward today without a lawyer?

> Mr. Beavers: Yes, sir. Yes, I'd like to proceed, yes, sir.

[5] OMHST had two witnesses subpoenaed or on standby to testify about those issues. Those two witnesses were excused and did not testify at either hearing.

[6] According to Dr. Carasig's testimony, the only way for her to clear Respondent's test would be if he had a prescription for "something like Marinol or dronabinol," which are "usually used for patients with complications from conditions like HIV or cancer where they are used when they need to stimulate the appetite." No evidence was presented that Respondent had a prescription for any such drug.

5

didn't intentionally take any sort of THC, how would you have dealt with that? What would have been the --

Dr. Carasig: As medical review officers, we're not permitted to overturn the results, sir, based on any claims of the use of CBD or hemp products even though they may or may not be legal in the state that they're, you know, purchased in. We can't – it's not something that we can verify or it's not a valid medical explanation, sir.

…

Dr. Carasig: … only way that we can clear a test result like this is if he had a prescription for something like Marinol or dronabinol.

Chair Clint Smith: My question is you cannot testify that the lab used a process or methodology that would distinguish between THC and CBD.

Dr. Carasig: I don't know of anything like that. All I can tell you is that it's a confirmed result used for Delta-9 THC which is the active THC constant.

Mr. Boothroyd: Okay. So you wouldn't be – so again, you wouldn't be able to tell whether it came from CBD oil, pot brownie or some other manner; is that correct?

Dr. Carasig: Right. The lab doesn't differentiate between them. The active THC is what they look for what they call the molecular fingerprint for the drug in question.

Due to a pain medicine addiction for prescription opioids, Respondent had been in a drug treatment program for several years prior to the random substance abuse drug and alcohol test at issue in the instant case. As part of his treatment, he is subjected

6

to drug testing. On February 9, 2020, he was tested as part of his treatment, and that test was negative for THC. According to the Respondent, on the following day, February 10, 2020, he went to BlueWells Family Pharmacy, Inc. and discussed his sleeping issues with a pharmacist. As a result of this conversation and due to the pharmacist's reassurance that CBD oil would not result in a positive test for THC, Respondent purchased and used CBD oil. On the following day, Respondent underwent a random substance abuse drug and alcohol test, which forms the basis of the appeal in the instant case.

During Respondent's testimony before the Board, it became apparent that he was either not offered the opportunity to have his split sample tested or he misunderstood and did not understand that he had that option. Thereafter, counsel for OMHST represented that if the sample was still available for testing and if Respondent chose to have the sample tested and it came back as negative, the OMHST would dismiss the case against Respondent. Although Respondent initially indicated that he would like to have the split sample tested (if it was available), he later changed his mind and waived his right to have the split sample tested.[7]

---

[7] The relevant testimony was as follows:

> Chair: Well, let's come back to this. Mr. Beavers, do you want – do you want the split sample tested or not?
>
> Mr. Beavers: Yeah, don't worry about it, sir. That's fine. Don't worry about it. It's just too much of a

(continued . . .)

7

Thereafter, the Board recessed and then resumed the hearing and announced that by a two-to-one decision, it found that the "evidence shows that the respondent consumed a CBD product; that CBD is not a controlled substance under the statute; and that CBD is a lawful, over-the-counter product to consume." The Board further found that the Respondent "consulted with a pharmacist in an effort to determine whether consuming this particular product would show positive on a drug screen and was assured it would not." Finally, the Board found that the "MRO [medical review officer] in this case was not able to – did not testify, was not able to testify that the testing mechanism used by –

<hr>

headache for everybody and that's fine. That's okay. I know what I –

Chair: Okay. You understand you have that right –

Mr. Beavers: -- done.

Chair: You understand you have that right?

Mr. Beavers: Yes, sir.

Chair: You understand you have the right with – as long as you pick a certified lab, the lab is entirely up to you – is entirely in your discretion who does the test. You understand that?

Mr. Beavers: Yes, sir. That's fine.

Chair: And understanding all that, you wish to give up or waive your right to have the split sample tested?

Mr. Beavers: Yes, sir. Don't worry about it.

methodology used by the lab in this matter was able to distinguish between THC and CBD."

The order of the Board was memorialized in its June 8, 2020 Decision, which granted Respondent's appeal and reinstated his mining certifications. The OMHST appealed the Board's decision to the Circuit Court of Kanawha County, and by Final Order entered on November 10, 2020, the circuit court denied the OMHST's appeal and affirmed the Board's Decision. This appeal followed.

## II. STANDARD OF REVIEW

As is well-established,

[o]n appeal of an administrative agency from a circuit court, this Court is bound by the statutory standards contained in [West Virginia] Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). With these standards in mind, we proceed to the parties' arguments.

## III. DISCUSSION

9

Respondent tested positive for THCA on his February 11, 2020 random substance abuse drug and alcohol test.[8] From the beginning, Respondent has argued that he tested positive for THCA because he used CBD oil on the day before his random drug test and had unintentionally or unwillingly ingested THC. Because the testing in this case cannot distinguish between CBD and THC, both the Board and the circuit court found that the OMHST failed to meet its burden. Petitioner argues that the circuit court erred in affirming the Board's decision.[9]

---

[8] According to Respondent, he was informed of his positive result during a phone call with Dr. Carasig on February 18, 2020.

[9] In addition, we wish to acknowledge the amicus curiae brief submitted by the Metallurgical Coal Producers Association. We value the Amicus Curiae Organization's contribution to this case and have considered its brief in conjunction with the parties' arguments.

A.     TESTING

The substance abuse screening policy at issue in this case became effective on January 1, 2013. *See* W. Va. Code § 22A-1A-1 *et seq.* Pursuant to West Virginia Code § 22A-1A-1(a), employers of certified persons[10] are required to implement a random substance abuse testing program that shall test for, at a minimum, the following ten substances:

(A)   Amphetamines;
(B)   Cannabinoids/THC;
(C)   Cocaine;
(D)   Opiates;
(E)   Phencyclidine (PCP);
(F)   Benzodiazepines;
(G)   Propoxyphene;
(H)   Methadone;
(I)    Barbituates; and
(J)    Synthetic narcotics

*Id*. Persons engaging in certified employment are subject to their employer's random substance abuse testing program.

Before the Board, Respondent stipulated to the following: (1) he was working in a certified position at the time of his random drug test on February 11, 2020; (2) he was properly selected to undergo a random drug test; and (3) the collection procedures were

---

[10] West Virginia Code § 22A-1-2 defines "certified person" and provides: "The term 'certified person', when used to designate the kind of person to whom the performance of a duty in connection with the operation of a mine shall be assigned, means a person who is qualified under the provisions of this law to perform such duty."

proper. Further, judicial notice was taken that the urine specimen was tested by a laboratory certified by SAMHSA.[11]  For these reasons, OMHST did not call witnesses regarding these issues.

The only witness called by the OMHST was Dr. Carasig, a medical review officer.  Dr. Carasig testified that she received and reviewed a positive lab result for Respondent along with a custody and control form, which showed the chain of custody to be intact.  She also testified about a conversation with Respondent in which she informed him of the positive result.  Further, because Respondent did not have a valid medical explanation for the positive result, she released his result as a positive test.

The Board relied heavily on Dr. Carasig's testimony that the test did not distinguish between THC and CBD, finding that "the Medical Review Officer was not able to testify that the testing mechanism or methodology used by the testing laboratory could distinguish between THC and CBD."  However, it is significant that Dr. Carasig essentially discounted this distinction by testifying that the test is a "confirmed result used" for detecting the "active THC constant."  Specifically, her testimony was as follows:

> Chair Clint Smith:   My question is you cannot testify that the lab used a process or methodology that would distinguish between THC and CBD.

---

[11] West Virginia Code § 22A-1A-1(a)(1) and W. Va. Code R. § 56-19-7.1.2 require SAMHSA certification.

Dr. Carasig:  I don't know of anything like that.  *All I can tell you is that it's a confirmed result used for Delta-9 THC which is the active THC constant.*

Mr. Boothroyd:  Okay.  So you wouldn't be – so again, you wouldn't be able to tell whether it came from CBD oil, pot brownie or some other manner; is that correct?

Dr. Carasig:  Right.   The lab doesn't differentiate between them.  *The active THC* is what they look for what they call the molecular fingerprint for the drug in question.

(emphasis added).[12]

Importantly, Respondent did not properly challenge his test results.  The method to challenge laboratory test results, the medical review officer's verification of the laboratory test result or the chemical test of breath is found in West Virginia Code of State Rules § 56-19-8 *et seq.*  Under these rules, Respondent was required to notify the Director of the OMHST, in writing, that he intended to challenge his test results or the medical review officer's verification of his test result at least fourteen days prior to the hearing

---

[12] The dissent argues that Dr. Carasig testified before the Board of Appeals that the drug test at issue in this case was unreliable because it could not distinguish between THC and CBD.  This is a mischaracterization of Dr. Carasig's testimony.  Rather, while Dr. Carasig acknowledged that the testing method *may* not have been able to distinguish between CBD and THC, the test unequivocally returned a positive THC result.  As we have explained herein, the *source* of that positive test result—whether legal or illegal—is immaterial.  While we understand the dissenters' desire to implement testing procedures that can distinguish between legal CBD and illegal THC, it is not the province of this Court to require the OMHST to do so.  To the extent that such testing procedures exist, the onus is on the Legislature to direct the OMHST to use those procedures, should the Legislature so desire.

13

date[13], and he failed to do so. Further, if he wished to challenge the lab results, he was required to have his split sample tested at a SAMHSA certified laboratory, which he also failed to do.[14] This information was provided to Respondent in the OMHST's February 19, 2020 letter to Respondent. Further, as was previously noted, during the hearing before the Board, the OMHST represented that if the split sample was still available for testing and if Respondent chose to have the split sample tested and it came back as negative, the OMHST would dismiss the case against Respondent.

---

[13] West Virginia Code of State Rules § 56-19-8.2 provides:

> Any person who intends to challenge the sample collection methods, the laboratory test results, the medical review officer's verification of the laboratory test result or the chemical test of breath, shall notify the Director of his or her intent. The person shall submit the notification in writing, either in person or by mail to the Director, at least fourteen (14) days prior to the hearing date. The notification shall specify, in detail, the challenge the person intends to make.

[14] West Virginia Code of State Rules § 56-19-8.3 provides:

> If the person submits notification in writing to the Director that he/she intends to challenge the laboratory test results or the medical review officer's verification of the laboratory test result, that person shall have the split sample tested, at his/her expense at a SAMHSA certified laboratory and those results verified by a medical review officer. The split sample results and the results of the split sample verification by a medical review officer shall be provided to the Director and the original medical review officer. No other form of evidence shall be admissible to challenge the laboratory test result of the medical review officer's verification of the laboratory test result.

14

Although Respondent initially indicated that he would like to have the split sample tested (if it was available), he later changed his mind and waived his right to have the split sample tested. Respondent, therefore, did not take the steps set out in the Code of State Rules to challenge his positive test result. The OMHST was not required to call a certifying scientist or a laboratory technician to affirm that the test results were true and accurate. Pursuant to West Virginia Code of State Rules § 56-19-8.4:

> If a person fails to comply with the notification requirements of this section, then the sample collection methods, the laboratory test results, the medical review officer's verification of the laboratory test result, or the chemical test of breath shall be admissible as though the person and the Director had stipulated to their admissibility.

Respondent's failure to challenge the test results is dispositive on this issue. The Board did not have the legal authority to disregard the laboratory test or to rely upon Dr. Carasig's testimony to create an exception or defense to the test that is found in neither the statute nor the rules governing the testing and suspension process.

B.      RESPONDENT'S DEFENSES TO POSITIVE TEST RESULT

We now shift our analysis to the question of whether Respondent's claim of CBD use constitutes a defense to his positive test. It simply does not. Respondent admits that he consumed a CBD product and, as a result, he either unintentionally or unwillingly ingested THC. Specifically, he alleges that he purchased and consumed a CBD product on February 10, 2020, after he was assured by a pharmacist that the CBD product would not have any impact on his drug screens. Before the Board, Respondent produced a letter from

Harold T. Wells, a registered pharmacist and owner of BlueWells Family Pharmacy, Inc. In his letter, Mr. Wells indicated that Respondent purchased "the 2 oz. of the dietary supplement Optivida Hemp Extract 540 from BlueWells Family Pharmacy, Inc." Mr. Wells further indicated that Optivida Health is "one of the most reputable processors of Hemp Extract in the country," and its "stated goal is for the CBD to be high and the THC to be as close to zero as possible." Mr. Wells was not called as a witness, and he did not indicate in his letter that he or any other pharmacist at his store assured Respondent that the CBD product would not have any impact on his drug screens.[15]

The Board was persuaded by Respondent's claims and supported its decision to grant Respondent's appeal and reinstate his mining certifications by finding that Respondent "consulted with a pharmacist prior to consuming a CBD product and was assured by the pharmacist that the CBD product would not result in a positive drug test for THC." In addition, the Board found that "the Medical Review Officer was not able to testify that the testing mechanism or methodology used by the testing laboratory could distinguish between THC and CBD."

---

[15] We are not unsympathetic to the claims of Respondent. We are mindful of his participation in a rehabilitation program and his drug screens as part of that program. We also note his testimony regarding the steps he took in an effort to try to make sure that CBD use would not impact any of his drug screens. However, these claims do not provide a defense to his positive drug test.

The Board is an administrative tribunal, and its power consists of only that which is given to it by statute. In *Francis O. Day Co.*, *Inc. v. West Virginia Reclamation Bd. of Review*, 188 W. Va. 418, 424 S.E.2d 763 (1992), this Court stated:

> Administrative agencies and their executive officers are creatures of statute and delegates of the Legislature. Their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. They have no general or common-law powers but only such as have been conferred upon them by law expressly or by implication.

*Id.* at Syl. Pt. 1.

Although this may be the first case in which this Court has had the opportunity to evaluate the "intent" argument as it relates to CBD products, this is not the first time that this Court has been faced with the argument that the OMHST must prove intentional consumption of marijuana. In *Dean v. West Virginia Office of Miners' Health, Safety and Training*, No. 15-0724 (W.Va. June 21, 2016) (memorandum decision), this Court was faced with a certified person who alleged that he unknowingly consumed marijuana brownies. In *Dean*, this Court examined the applicable statutes and rules and noted that "[i]t is clear from the language of [West Virginia Code of State Rules § 56-19-6.4.1.] that the only relevant inquiry is whether the certified individual tested positive for a prohibited substance." *Id.* at *2. In addition, this Court clearly stated that we have no statute or rule that "require[s] [the OMHST] to prove intentional consumption of marijuana." *Dean* at *2.

17

The Coal Mine Safety Board of Appeals does not have the authority to treat the consumption of a CBD product as a legal defense to a positive test for cannabinoids/THC when neither West Virginia Code § 22A-1A-1 *et seq.* nor West Virginia Code of State Rules § 56-19-1 *et seq.* provide for such a defense to an otherwise positive test. Although the West Virginia Legislature authorized the sale of CBD products after *Dean* was decided, the statutes and rules regarding the testing at issue in this case have *not* been amended to permit CBD use as a defense.

West Virginia Code § 22A-1A-1(d)(1)(A) provides the only way to excuse Respondent's positive drug test. Employers shall notify the Director of "[a]ny positive drug or alcohol test of a certified person. However, for purposes of determining whether a drug test is positive the certified employee may not rely on a prescription dated more than one year prior to the date of the drug test result." *Id.* Dr. Carasig testified that the only way for her to clear Respondent's test would be if he had a prescription for "something like Marinol or dronabinol," which are "usually used for patients with complications from conditions like HIV or cancer where they are used when they need to stimulate the appetite." No evidence was presented that Respondent had a prescription for any such drug.

West Virginia Code § 22A-1A-1 *et seq.* is clear. Employers of certified persons are required to implement a substance abuse screening policy and program that

shall test for certain substances.[16] Employers are required to notify the Director of certain events as they relate to drug and alcohol tests.[17] For purposes of our review in the instant case, Respondent's employer was required to notify the Director, within seven days of Respondent's positive drug test.[18] Further, the Board was required to suspend Respondent's certification cards for a minimum of six months from the date of his positive drug test.[19] "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

A decision that permits CBD use as a defense to a positive drug test is contrary to the statutory scheme enacted by the West Virginia Legislature. The OMHST and amicus curiae argue that permitting CBD use as a defense would allow every miner who fails a THC screen to avoid temporary suspension by simply arguing that he or she used a CBD product, and we agree. If the West Virginia Legislature had desired to permit CBD use as a defense to a positive drug test, it could have done so, either at the time it passed the original testing statute, or when it authorized the sale of CBD products, but it

---

[16] *See* W. Va. Code § 22A-1A-1(a).

[17] *See* W. Va. Code § 22A-1A-1(d).

[18] *Id.*

[19] *See* W. Va. Code § 22A-1A-2(c).

19

has clearly not recognized any such CBD use defense. It is simply not within our purview to act as a "superlegislature" and impose any such defense.

Before this Court, Respondent also argues that the OMHST had the burden of showing that he "abused substances banned by the applicable statute and regulations." In support of this argument, Respondent argues that the OMHST failed to present evidence that he consumed marijuana or that he was impaired on the date of his random drug screen, and he is correct. However, Respondent fails to acknowledge that the OMHST was not required to prove either of those things. According to Respondent, the drug screening procedure is "designed to identify whether or not miners have been abusing either alcohol or the other substances" identified in West Virginia Code § 22A-1A-1. In this regard, Respondent believes that the OMHST had the burden to show that he actually "abused" the substances identified in West Virginia Code § 22A-1A-1. We disagree.

Despite Respondent's argument to the contrary, the substance abuse screening policy and program contemplated in West Virginia Code § 22A-1A-1 *et seq.* is absolutely designed to suspend and/or revoke the certifications of miners who have been "determined to have a positive drug or alcohol test" as determined by the provisions of West Virginia Code § 22A-1A-1 *et seq.* There is no requirement that the OMHST prove that the certified person abuses alcohol or drugs. Further, Respondent's argument that his use of a CBD product is a defense because it is a legal, over-the-counter product is misplaced. In addition to the ten specific drug-related substances set forth in West Virginia

Code § 22A-1A-1, the statute also requires alcohol tests. As alcohol is also a legal product, the statute clearly tests for legal products. Respondent has cited no legal authority that would support his position that the mere fact that CBD is not, per se, illegal means that it can be asserted as a defense to a positive THC testing result.

In summary, Respondent has attempted, through the numerous defenses he has asserted, to shift the focus from the simple question on which this case rests: did he have a valid positive cannabinoids/THC test result? The answer to that question is yes. Therefore, because he has not successfully challenged the testing process or result, and he has no valid prescription that would fulfill the one valid and allowable defense, the statutory requirement that he be suspended is mandatory. Respondent essentially argues that in order for his certification to be suspended, OMHST must show he illegally used marijuana. No legal authority requires OMHST to make such a showing. By alleging that his use of CBD is a defense to a positive cannabinoids/THC test, Respondent is attempting to rewrite the statute to require that a test distinguish between THC and CBD. Neither the statute nor the rules interpreting it require that the test make such distinction. Finally, Respondent alleges that the mere fact that CDB products are not illegal prohibits his suspension for a positive cannabinoids/THC test. Respondent cannot claim this defense, not only because the statute and rules provide no such defense, but also because, as illustrated by the fact that the list of substances for which a certified person is to be tested includes such legal substances as alcohol, the test is not limited to substances that are, per se, illegal.

21

C.    SUSPENSION

Finally, we turn to the issue of Respondent's suspension. West Virginia Code § 22A-1A-2(c) clearly requires the Board to suspend mining certifications "for a minimum of six months" if a certified person is "determined to have a positive drug or alcohol test as determined pursuant to the provisions of this article." *Id.* The Board clearly failed to follow this directive. For the reasons set forth above, the circuit court erred in affirming the Board's decision.

## IV. CONCLUSION

Therefore, for the reasons set forth herein, we reverse the November 10, 2020, order of the Circuit Court of Kanawha County, and remand this action to the circuit court with direction to reinstate the temporary suspension of the Respondent's mining certifications.

Reversed and Remanded.

22